# 25-0481-cv

## United States Court of Appeals

*for the*

## Second Circuit

CANDACE A. BUTTS,

*Plaintiff-Appellant,*

— v. —

EUGENIA KELCH, THERESA DAVIS, NEW YORK CITY DEPARTMENT
OF EDUCATION, UNITED FEDERATION OF TEACHERS,
STELLA INSERRA, RYAN WELCH, WILLIAM KALOGERAS,

*Defendants-Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

## BRIEF AND SPECIAL APPENDIX
## FOR PLAINTIFF-APPELLANT

KENECHUKWU C. OKOLI
LAW OFFICES OF K.C. OKOLI, P.C.
*Attorneys for Plaintiff-Appellant*
5 Penn Plaza, 23rd Floor
New York, New York 10001
(212) 564-8152

CP COUNSEL PRESS (800) 4-APPEAL • (380881)

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................... iii

PRELIMINARY ...............................................................................1

JURISDICTIONAL STATEMENT ....................................................3

STATEMENT OF ISSUES PRESENTED FOR REVIEW ....................4

STATEMENT OF THE CASE............................................................5

    A.    Procedural History...............................................................5

    B.    Issues and Contentions ........................................................6

STANDARDS OF REVIEW GOVERNING
RULE 12(b)(1)&(6) MOTIONS ....................................................7

SUMMARY OF ARGUMENT ..........................................................8

ARGUMENT ..................................................................................9

    POINT I

    DISTRICT COURT APPLIED INCORRECT LEGAL
    STANDARD IN EVALUATING DEFENDANT'S RULE 12(b)(1)
    MOTION FOLLOWING REMOVAL OF THE CASE FROM
    STATE COURT ....................................................................9

    POINT II

    DISTRICT COURT ERRED IN CONCLUDING THAT
    APPELLANT DID NOT ADEQUATELY PLEAD A CASE OF
    GENDER DISCRIMINATION...................................................10

    POINT III

    DISTRICT COURT ERRED IN CONCLUDING THAT
    APPELLANT DID NOT SUFFICIENTLY PLEAD RACE AND
    NATIONAL ORIGIN DISCRIMINATION .................................11

POINT IV

THE DISTRICT COURT MISCONSTRUED THE FACTS AND
MISAPPLIED SETTLED LAW RESULTING IN MANIFEST
INJUSTICE TO APPELLANT ....................................................................12

POINT V

DISTRICT COURT ERRED IN DISMISSING APPELLANT'S
RETALIATION CLAIMS ...........................................................................17

CONCLUSION ..................................................................................................19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........................................................................7

*ATSI Commc'ns Inc. v. Shaar Fund, Ltd.*,
493 F.3d 87 (2d Cir. 2007) ........................................................ 7, 13

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ................................................................ 7, 8, 13

*CBOCS West, Inc. v. Humphries*,
553 U.S. 442 ...................................................................................16

*Conley v. Gibson*,
355 U.S. 41 .....................................................................................13

*Goldman v. Belden*,
754 F.2d 1059 (2d Cir. 1985) ..................................................... 7, 13

*Hussein v. Maait*,
129 F.4th 99 (2d Cir. 2025) ...........................................................10

*Johnson v. City of Shelby, Miss.*,
574 U.S. 10 (2014) .........................................................................14

*Kaplan v. Lebanese Canadian Bank, SAL*,
999 F.3d 842 (2d Cir. 2021) ..................................................... 12, 17

*Manigault v. C.W. Post of Long Island University*,
659 f. Supp.2d 367 .........................................................................16

*Marakova v. United States*,
201 F.3d 110 (2d Cir. 2000) .............................................................9

*McCarthy v. Dun & Bradstreet Corp.*,
482 F.3d 184 (2d Cir. 2007) ..................................................... 7, 12

*Miller v. Wolpoff & Abramson, L.L.P.*,
321 F.3d 292 (2d Cir. 2003) .............................................................8

*Swierkiewicz v. Sorema N.A.*,
534 U.S. 506 (2002) ................................................................. 13, 14

iii

*Vossbrinck v. Accredited Home Lenders, Inc.*,
   773 F.3d 423 (2d Cir. 2014) ........................................................ 6, 8, 10

*Weixel v. Bd. of Educ. of City of New York*,
   287 F.3d 138 (2d Cir. 2002) ...................................................................15

## Statutes & Other Authorities:

28 U.S.C. § 1331 ...................................................................................3

28 U.S.C. § 1342 ...................................................................................3

28 U.S.C. § 1441(a) ...............................................................................3

42 U.S.C. § 1981 ...................................................................................3

42 U.S.C. § 1983 ...................................................................................3

Fed. R. App. P. 3 ...................................................................................3

Fed. R. Civ. P. 12 ........................................................................... 3, 5, 11

Fed. R. Civ. P. 12(b) .............................................................................6

Fed. R. Civ. P. 12(b)(1).............................................................. *passim*

Fed. R. Civ. P. 12(b)(6)................................................................. 4, 7, 12

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT
--------------------------------------------------------------X   Docket No. 25-481
CANDACE A. BUTTS,

                         Plaintiff-Appellant

-against-


EUGENIA KELCH, THERESA DAVIS, NEW YORK
CITY DEPARTMENT OF EDUCATION, UNITED
FEDERATION OF TEACHERS, STELLA INSERRA,
RYAN WELCH, WILLIAM KALOGERAS,

                         Defendants-Appellees
--------------------------------------------------------------X


## APPELLANT'S BRIEF


## PRELIMINARY


        This action was commenced in the Kings County Supreme Court by

Appellant, a long-time, tenured U.S. born African-American female

paraprofessional employee of New York City Department of Education ("DOE"),

against DOE, her School Principal, Eugenia Kelch, her Assistant School Principal,

Theresa Davis, and her labor union, United Federation of Teachers ("UFT"), for

violating her civil and constitutional rights, and for breach of the Collective

Bargaining Agreement ("CBA"), and the UFT's duty of fair representation. *See*

Third Amended Complaint ("TAC").

1

With the collusion of the UFT, which either refused to process Appellant's legitimate complaints against DOE, Kelch and Davis, or completely failed in their duty of fair representation to the Appellant, defendants subjected Appellant to a hostile work environment, and discriminated against her on the basis of her race. Appellees also instructed Appellant to violate the IEP of the Special Education Student assigned to the Appellant which Appellant refused. Appellees retaliated against Appellant for her refusal. Appellees retaliated against Appellant also for filing multiple special education and OSI complaints against the Appellees for their violation of rules, and the rights of Appellant's special education student. When the same special education student was reassigned to Yozi Kuma, an Ethiopian-born paraprofessional, who had not complained or advocated for the special education student, Appellees treated Yozi Kuma markedly better than and gave her all the help which they had withheld from the Appellant. (A231-233).[1]

Appellees removed this case to the U.S. District Court from the Kings County Supreme Court where it was commenced. (A14-A36). Thereafter, they moved to dismiss the action, both for lack of subject matter jurisdiction and for failure to state a claim. Over the opposition of the Plaintiff-Appellant, the District

---

[1] "A" denotes the Joint Appendix, and the number which follows is the page number of the Joint Appendix.

2

Court granted Defendants' Rule 12 motions to dismiss. (SPA1-SPA33)[2]. In granting dismissal of Plaintiff's federal claims, the District Court also relied upon cases with different review standards, summary judgment cases or cases which went to trial, instead of Rule 12 motion cases. Appellant sought reconsideration of the dismissal which the District Court denied on February 4, 2025. (SPA 34-SPA41). This timely appeal followed. (A376).

## JURISDICTIONAL STATEMENT

The basis of subject matter jurisdiction in the District Court is federal question pursuant to Title 28 U.S.C. §§1331, 1342 and 1441(a). Appellant sued the Appellees for violation of Appellant's constitutional rights pursuant to 42 USC §§1981 and1983, among others. The basis of subject matter jurisdiction in the Court of Appeals, is Rule 3 of the Federal Rules of Appellate Procedure. On September 30, 2024, the District Court dismissed Appellant's federal claims in this matter, and declined jurisdiction over her remaining state law claims. (SPA1-SPA33).

Appellant moved for reconsideration of the dismissal which the District Court denied on February 4, 2025. (SPA34-SPA41). And Appellant duly filed a timely Notice of Appeal on February 28, 2025. (A-376).

---

[2] "SPA" denotes Special Appendix, and the number which follows is the page number of the Special Appendix.

3

## <u>STATEMENT OF ISSUES PRESENTED FOR REVIEW</u>

1. Is the District Court correct to grant the Appellees' motion to dismiss the federal claims in the TAC under Rule 12(b)(6) in this litigation?

2. Did the District Court apply the correct legal standard in evaluating Defendant's Rule 12(b)(1) motion in light of the fact that the motion was made in a case removed from state court to federal court?

3. Was the District Court not bound to remand UFT's case to the State Supreme Court from which it was removed instead of granting a dismiss pursuant to Rule 12(b)(1)?

4. Having accepted that Appellant belongs to the protected classes of gender (female), race (Black), and national origin (American) (SPA14), was the District Court correct in concluding that the "TAC <u>entirely fails to carry even the *de minimis* burden of establishing discriminatory intent</u> on the basis of Plaintiff's race, gender, or ethnicity"? (Emphasis add). The court cited *Zimmermann*, 251 F. 3d at 381, in support of this position. (SPA15).

5. Is the District Court correct in dismissing Appellant's unlawful discrimination and retaliation claims against the individual defendants in this case?

6. Did Plaintiff not adequately plead a case of retaliation in this action for

4

complaining about the poor and discriminatory treatment directed at her

special education student, and Appellant's refusal to engage in fraudulent

assignment of marks to a student who did not offer Spanish class?

7. Did Plaintiff not sufficiently plead a case of First Amendment

associational discrimination and retaliation in this action?

## STATEMENT OF THE CASE

### A.    Procedural History

Appellant commenced this action in the Kings County Supreme Court in

2022 for discrimination and retaliation, among other claims against the Appellees.

On July 27, 2022, Appellees filed a notice of removal removing the entire action to

the district court. (A14-A36).

Plaintiff ultimately filed a Third Amended Complaint ("TAC"), which the

Appellees moved to dismiss pursuant to Rule 12 of the Federal Rules of Civil

Procedure. Plaintiff duly opposed the motions. (A66-A311).

The District Court dismissed the federal claims and declined supplemental

jurisdiction

over the state claims asserted by the Plaintiff. (SPA1-SPA33). Thereafter, the

Clerk's Judgment was entered on September 30, 2024. (A312). Upon Appellant's

motion for reconsideration, the district court denied the motion on February 4,

2025. (SPA34-SPA41). Appellant duly filed a timely Notice of Appeal on

February 28, 2025. (A376).

###    B.    Issues and Contentions

The underlying action being one that was removed to the District Court from the Supreme Court of the State of New York, Kings County which had original jurisdiction over all the claims asserted therein, the District Court erred in granting the motion to dismiss pursuant to Rule 12(b)(1); it was mandated to remand the case to the state court from which it was removed. *See Vossbrinck v. Accredited Home Lenders, Inc.,* 773 F.3d 423 (2d Cir. 2014).

In addition to the foregoing error, the District Court further erred in dismissing the TAC on the ground that Appellant failed to state a claim. Quite the contrary. Had the district court applied the correct standard for the review of a Rule 12(b) motion, by drawing all available inferences in favor of the Appellant, as the nonmovant, it would have concluded that the Appellant pleaded enough facts to withstand dismissal of the TAC. As this Brief will show, Appellant sufficiently pleaded her claims of race, gender and national origin discrimination, hostile work environment as well as retaliation.

In dismissing the Appellant's federal claims, the district court relied upon inapposite case law or misconstrued the facts, and as a result came to an erroneous conclusion. Finally, the District Court further erred when it denied the Appellant's motion for reconsideration.

6

## STANDARDS OF REVIEW GOVERNING RULE 12(b)(1)&(6) MOTIONS

The standards governing a motion to dismiss a complaint in the Second Circuit, pursuant to Federal Rules of Civil Procedure, 12(b)(6), are well-settled. "To survive a motion to dismiss [pursuant to Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A complaint must provide more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at U.S. at 555 (citations omitted).

When considering a motion to dismiss pursuant to Rule 12(b)(6), a court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). The court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985). Thus, to survive dismissal, a plaintiff must plead "factual allegations sufficient to raise a right to relief above the speculative level." *ATSI Commc'ns Inc.*

7

*v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). With regard to a Rule 12(b)(1) motion made following the removal of a case from a state court, which had jurisdiction, to federal court, the case should be remanded to state court if the federal court lacks subject matter jurisdiction. *See Vossbrinck v. Accredited Home Lenders, Inc.,* 773 F.3d 423 (2d Cir. 2014).

The Circuit Court of Appeals reviews *de novo* determinations of a district court that resolve a motion to dismiss a complaint. *Miller v. Wolpoff & Abramson, L.L.P.,* 321 F.3d 292, 300 (2d Cir. 2003). A *de novo* review of the dismissal motion at bar leaves no doubt that Appellant sufficiently pleaded her claims in the TAC, and that the District Court should not have dismissed Appellant's federal claims as it did.

## SUMMARY OF ARGUMENT

Appellant's argument in this appeal may be thus summarized. In the first place, since the case was removed from the Supreme Court of the State of New York, County of Kings, to the United States District Court for the Eastern District of New York, the district court should not have dismissed the action pursuant to Rule 12(b)(1), but *was required to remand* the case back to the state court from which it was removed. Therefore, the district court erred in that regard.

The district court misconstrued the allegations of the TAC, failed to draw all the proper inferences from the allegations, and misapplied the governing law which led it to conclude erroneously, that Appellant did not state a case for race, national

8

origin and gender discrimination in this action.

The district court also erred when it dismissed Appellant's retaliation claims in the face of multiple retaliatory actions taken by the Appellees against the Appellant for engaging and protected activities which included advocating for her disabled student and filing multiple complaints for violation of the student's IEP rights and other violations within the school.

## ARGUMENT

### POINT I

DISTRICT COURT APPLIED INCORRECT LEGAL STANDARD
IN EVALUATING DEFENDANT'S RULE 12(b)(1) MOTION
FOLLOWING REMOVAL OF THE CASE FROM STATE COURT

The District Court misstated the legal standard applicable Rule 12(b)(1) motion in this case in light of the fact that defendants' Rule 12(b)(1) was made after the case was removed from state court to the federal court. The District Court stated that the court was required to dismiss the action if the court is not authorized to adjudicate the plaintiff's claims, citing *Marakova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). (SPA10). The District Court was clearly unmindful of the fact that the Rule 12(b)(1) motion before it was made *following the removal of the case from state court to the federal court*. Under those circumstances, instead of adjudicating the merits by a dismissal, the District Court was required to remand

the case to the Kings County Supreme Court from which it was removed to the federal court. *See Vossbrinck v. Accredited Home Lenders, Inc.,* 773 F.3d 423 (2d Cir. 2014); *Hussein v. Maait,* 129 F.4th 99 (2d Cir. 2025).

## POINT II

### DISTRICT COURT ERRED IN CONCLUDING THAT APPELLANT DID NOT ADEQUATELY PLEAD A CASE OF GENDER DISCRIMINATION

The district court summarized some of the activities which form the basis of the Appellant's unlawful discrimination and retaliation claims in this action. And then concluded that 'These actions are not protected activity because Plaintiff's complaints were not "about or otherwise opposing discrimination."' (SPA17-18). Quite the contrary. The punishment meted out to Appellant and that meted out to Jean Brutus, a male, for the very same conduct – spending their lunch break together - is different.

Appellant pleaded that she is female and (A39, ¶11); that Jean Brutus is a male employee at the same school (A52, ¶114; A57, 148); that Appellees suspended her for spending her lunch break with Jean Brutus which Appellees had improperly forbidden (A59, ¶160). And there is nothing to suggest that Jean Brutus was ever suspended for spending his lunch break with the Appellant. These are all facts from which a reasonable inference of gender discrimination can be drawn. Nor is there any indication that Jean Brutus was being ostracized like

10

Appellant.

Moreover, there is also the case of Viktor Kurlyluk, a male, whom Kelch was paying *per session on DOE time* when all staff, including Appellant, were attending required professional development. In May 2022, Appellant filed an OSI complaint (22-04996X) against Kelch about this but nothing came out of it to the best of Appellant's knowledge. (A57, ¶149). Appellant was never paid per session while attending professional development. The foregoing are instances of gender discrimination which the district court glossed over. For the district court to suggest that Appellant had the burden of establishing or demonstrating these facts at the Rule 12 motion stage is error. All that is required is for Appellant to demonstrate that *she is entitled to lead evidence consistent with the allegations of her TAC.* And she did so in this case. Therefore, this Court should reverse.

## POINT III

### DISTRICT COURT ERRED IN CONCLUDING THAT APPELLANT DID NOT SUFFICIENTLY PLEAD RACE AND NATIONAL ORIGIN DISCRIMINATION

Appellant's race and national origin discrimination relates to the disparity in the treatment which the Appellees gave to both her and Yozi Kuma under identical circumstances. Appellant was assigned to a special education student whose IEP the Appellees were violating. Appellant protested this treatment and filed complaints of the violation of this student's IEP. (A41, ¶¶32-36;A43, ¶¶46-47,

11

¶¶52-53). This student needed many things including the services of a Japanese speaking paraprofessional. (A44, ¶55). This student was later reassigned to Yozi Kuma in September 2020. Like Appellant, Yozi Kuma is a paraprofessional who did not speak Japanese, but was born in Ethiopia. Appellees offered special training to Yozi Kuma to help her cope with the situation until a Japanese speaking paraprofessional could be found for the student. Appellees never offered the Appellant this special training which they offered to Ms. Kuma, and Ms. Kuma never filed any complaints on behalf of this special education student. (A44-A45). Appellant was born in the United States and is African American, as distinct from the Ethiopian-born Yozi Kuma.

## POINT IV

### THE DISTRICT COURT MISCONSTRUED THE FACTS AND MISAPPLIED SETTLED LAW RESULTING IN MANIFEST INJUSTICE TO APPELLANT

In its decision, the District Court appeared to have viewed the allegations of the TAC individually in isolation, rather than view same as a whole in their totality as required by law. *See Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842, 865 (2d Cir. 2021). When considering a motion to dismiss pursuant to Rule 12(b)(6), a court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). The court's function on a

12

motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985). Thus, to survive dismissal, a plaintiff must plead "factual allegations sufficient to raise a right to relief above the speculative level." *ATSI Commc'ns Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555).

The Supreme Court was quite instructive in *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002) where, in reversing a dismissal on a motion for failure to state a claim, the Court restated the governing standard. The Supreme Court emphasized that it is simple notice pleading standard that is required in federal courts. And given this standard of pleading, "a *court may dismiss a complaint **only** if it is clear* that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Id.*, 514. (Emphasis added). Can it be said that it is clear from the allegations of the TAC, that Appellant herein can prove no set of facts *consistent with the TAC* to entitle her to relief? *See Conley v. Gibson,* 355 U.S. 41, 45-46.

A "*complaint does not need to contain specific facts establishing a prima facie case of discrimination* under the McDonnel Douglas framework—which, among other matters, provided a flexible evidentiary standard, *not a pleading requirement*.." *Swierkiewicz, Id.*, 510. (Emphasis added). Justice Thomas, after

13

alluding to what discovery might uncover in that litigation concluded: "It thus seems incongruous to require a plaintiff, in order to survive a motion to dismiss, to plead more facts than he may ultimately need to prove to succeed on the merits if direct evidence of discrimination is discovered." *Swierkiewicz, Id*., 511-512.

A close reading of the Memorandum and Order of the District Court suggests that the court based its dismissal of the Plaintiff's federal claims for failure to state a claim upon the following: 1) that the conduct described against the individual defendants towards Plaintiff "simply do not amount to objectively pervasive harassment"; 2) that Plaintiff failed to allege that the alleged harassment was based on Plaintiff's membership in a protected class, whether it be her race, sex, or national origin." (SPA13); and 3) that the events described by Plaintiff were trivial in nature. (SPA15-16). And finally, that Plaintiff's retaliation claims must be brought under the same statutes under which her discrimination claims are brought. (SPA16-17).

First, Appellant's complaint need not *expressly invoke* a statute in order to get relief under the statute. *See Johnson v. City of Shelby, Miss*., 574 U.S. 10 (2014) where, in summarily reversing the Fifth Circuit Court of Appeals, the Supreme Court specifically held that no rule requires a plaintiff seeking damages for violations of constitutional rights to invoke Section 1983 expressly in order to state a claim. By parity of reasoning, Appellant is not required to invoke violation of a disability

14

statute relating to her student in order to be entitled to a claim of retaliation based thereon.

Secondly, Appellant took steps to protect the rights of a disabled student to whom she was assigned as a one-on-one paraprofessional, and defendants retaliated against her for doing so. (A41, A43-46). The complaint in this action shows that between February and March, 2020, plaintiff filed a special education complaint about the violation of the IEP of the special education (disabled) student who was assigned to her as a paraprofessional. Plaintiff also complained about lack of a laptop computer required by her to properly help the student in her work. Shortly thereafter, in retaliation, defendants Kelch and Davis began to harass plaintiff by making it very difficult for plaintiff to perform her work at the school; they did not provide plaintiff with the laptop. (A43-44). It is well-established that advocacy on behalf of the rights of the disabled, as plaintiff did for her special needs student, is protected activity under the ADA. *See*, *e.g.*, *Weixel v. Bd. of Educ. of City of New York*, 287 F.3d 138, 149 (2d Cir. 2002).

Moreover, in September 2020, defendants assigned another paraprofessional, Yozi Kuma, who, like plaintiff did not speak Japanese, to the same student. Ms. Kuma was given special training to cope with the situation and provided every help required by her to perform as the student's paraprofessional. Appellees never offered similar help to the Appellant. (A44-45). Plaintiff filed a

15

Special Education complaint on behalf of her disabled student in February 2020, and reported on March 23, 2020, that she did not have a laptop computer to help the student with her remote learning, and on March 25, 2020, defendants began their retaliatory actions against plaintiff, initially using Betsy Benedith. (A43). Defendants continued their retaliatory conduct which also amounted to hostile work environment against plaintiff unabated until February 1, 2023, when they terminated plaintiff's employment with DOE. Retaliation does not depend on a successful discrimination claim, and retaliation claims cognizable under Section 1981 include a claim by individual, whether black or white, who suffers retaliation because he has tried to help a different individual, suffering direct racial discrimination, secure his Section 1981 rights. *See CBOCS West, Inc. v. Humphries*, 553 U.S. 442. By parity of reasoning, a retaliation claim cognizable under ADA includes a claim by a person who suffers retaliation because she has tried to help a different individual, suffering direct disability discrimination, secure her ADA rights. In *Manigault v. C.W. Post of Long Island University*, 659 f. Supp.2d 367, it was held that a professor's allegation that he was not reappointed to his teaching position due to his complaint to university about its first-year composition program that discriminated against students with learning disabilities stated claim of retaliation under ADA.

On a Rule 12(b)(6) motion such as this, the court "should consider all of the

16

complaint's allegations, *rather than considering each in isolation*, and to accept as true *all permissible inferences that could be drawn from the complaint as a whole*." (Emphasis added). *Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842, 865 (2d Cir. 2021).

The District Court recognized that plaintiff belongs to three protected classes here: gender (female), race (Black), and national origin (American). (SPA 14). But it failed to draw all the permissible inferences from the whole of the TAC. Plaintiff pleaded her association with Jean Brutus, a male staff at the school during their lunch break, and the difference in the suspension without pay which she got from Defendants who did not suspend Mr. Brutus. The court adverted to this fact yet, it failed to draw the obvious inference from the pleaded facts that Appellant was treated differently from Mr. Brutus because she is female, and in retaliation for refusing to comply with an unlawful order. Would it have made a difference in the court's analysis if Appellant had simply stated, "defendants conduct is because I am female" when the pleaded facts do not point to another reasonable conclusion?

## POINT V

## DISTRICT COURT ERRED IN DISMISSING
## APPELLANT'S RETALIATION CLAIMS

The Appellant pleaded numerous retaliation claims which the District Court either overlooked or erroneously concluded were not retaliation claims, ostensibly because Appellant's conduct which preceded Appellee's retaliatory actions did not

17

amount to "protected activity." (SPA18). A few of the retaliatory actions pleaded in the TAC will demonstrate that the District Court erred in dismissing Appellant's retaliation claims.

Appellant filed complaints against Appellees relating to the discriminatory treatment, including the disregard of the IEP, of her disabled special education student. Essentially, Appellant was advocating for her student with disability, and refused to violate the student's IEP. (A46, A48). The retaliation took many forms but became more serious beginning in October 2021, and continued until the unlawful termination of the Appellant in February 1, 2023. (A43-A56, A61).

Despite being awarded money in January 2023 in a pay grievance, Appellees still refused to pay same to this day, all as part of their hostile work environment and retaliation against Appellant. Appellant pleaded various actions taken by her, including complaints which were promptly followed by retaliation on the part of the Appellees. (A55).

Appellant's suspension without pay for four days is continuing retaliation against Appellant. (A59). Not only did Appellees refuse to pay Appellant despite a favorable arbitration award, shortly thereafter Appellees delivered the *coup de grace* by unlawfully terminating Appellant on February 1, 2023.

## <u>CONCLUSION</u>

For all of the foregoing reasons, this appeal should be allowed, the judgment

of the district court vacated, and the case remanded in its entirety to the district

court for further proceedings.

Dated:     New York, New York
             May 12, 2025

                        **LAW OFFICES OF K.C. OKOLI, P.C.**
                        *Attorneys for Plaintiff-Appellant*
                        CANDACE A. BUTTS
                        5 Penn Plaza, 23rd Floor
                        New York, New York 10001
                        (212) 564-8152

                        By: _____/s/_____
                                K.C. OKOLI, ESQ.

# SPECIAL APPENDIX

i

## TABLE OF CONTENTS

**Page**

Memorandum and Order of the Honorable Orelia E.
    Merchant, dated September 30, 2024, Appealed
    From........................................................................ SPA-1

Memorandum and Order of the Honorable Orelia E.
    Merchant, dated February 4, 2025, Appealed
    From........................................................................ SPA-34

SPA-1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------x

CANDACE A. BUTTS,

                        Plaintiff,                        **MEMORANDUM AND ORDER**
                                                22-CV-04418 (OEM) (CLP)

         -against-

NEW YORK CITY DEPARTMENT OF
EDUCATION, EUGENIA KELCH, THERESA
DAVIS, UNITED FEDERATION OF TEACHERS,
RYAN WELCH, STELLA INSERRA,
WILLIAM KALOGERAS,

                        Defendants.
---------------------------------------------------------------x

**ORELIA E. MERCHANT, United States District Judge:**

       Plaintiff Candace A. Butts ("Butts" or "Plaintiff") brings this action against the following defendants: Eugenia Kelch ("Kelch"), Theresa Davis ("Davis") (collectively, "Individual City Defendants"), New York City Department of Education ("DOE") (collectively, "City Defendants"), Defendants Ryan Welch ("Welch"), Stella Inserra ("Inserra"), William Kalogeras ("Kalogeras") (collectively "Individual Union Defendants"), and the United Federation of Teachers, Local 2, AFT, AFL-CIO ("UFT") (collectively "Union Defendants") in the state of New York alleging five causes of action: (1) hostile work environment, (2) breaches of Collective Bargaining Agreement ("CBA") and racial discrimination, (3) conspiracy to violate rights, (4) continued retaliation, and (5) wrongful termination, pursuant to: 42 U.S.C. § 1981 ("Section 1981"); 42 U.S.C. § 1983 ("Section 1983"); 42 U.S.C. § 1985 ("Section 1985"); New York City Human Rights Law, N.Y.C Administrative Code §§ 8-101 et seq. ("CHRL"); New York Labor Law ("NYLL") § 740; New York State Civil Service Law ("CSL") §§ 75 and 75-b; and Labor Management Relations Act, 29 U.S.C. §§ 185-188 ("LMRA") (8) New York State Constitution.

1

SPA-2

*See* Plaintiff's Third Amended Complaint ("TAC" or "Complaint" or "Compl."), ECF 33 at 22-26. Plaintiff seeks monetary damages and injunctive relief. TAC at 1.

Before the Court is Union Defendants' motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction and 12(b)(6) for failure to state a claim and the City Defendants' motion to dismiss under Rule 12(b)(6) only. For the reasons stated below, these motions are **GRANTED** with regard to Plaintiff's federal claims.

## BACKGROUND[1]

### A. The Parties

Plaintiff Butts is a paraprofessional and United States-born African American who was terminated from her position at Life Academy High School for Film and Music ("High School" or "the School") on February 1, 2023. TAC ¶¶ 9-11, 191. At the time, the New York City DOE was Plaintiff's employer, *id.* ¶ 14, Eugenia Kelch was the principal at the High School, *id.* ¶ 15, and Theresa Davis was the assistant principal there, *id.* ¶ 16. Additionally, the UFT was Plaintiff's sole bargaining agent, responsible for representing her in all of her employment-related disputes. *Id.* ¶¶ 19-21. Ryan Welch and Stella Inserra were UFT Chapter Leaders who handled Plaintiff's grievances, *id.* ¶ 22-23, and William Kalogeras was a UFT District Representative who had a supervisory role over Plaintiff's grievances, *id.* ¶ 24.

### B. 2019-2020 School Year

In September 2019, Kelch shortened Plaintiff's lunch period by 15 minutes without compensation, and Plaintiff claims she was never paid for the salary lost as a result. *Id.* ¶¶ 27, 31.

---

[1] The Court draws the following facts from "the facts and allegations that are contained in the Complaint and in any documents that are either incorporated into the complaint by reference or attached to the complaint as exhibits." *Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 217 (2d Cir. 2004). "The Court may consider documents outside of the complaint, however, if the plaintiff relied on them to frame his pleading." *Norton v. Town of Islip*, 97 F. Supp. 3d 241, 252-53 (E.D.N.Y. 2015). "The Court may also take judicial notice of public documents in deciding a motion to dismiss." *Id.* at 253.

SPA-3

In February 2020, after Plaintiff requested an elevator pass, Welch told Plaintiff she needed to present a doctor's note to receive one. *Id.* ¶¶ 37, 42. Plaintiff asserts no other employee was required to do so. *Id.* ¶ 43. Plaintiff also asserts that she did not have a computer during this time and requested a laptop on March 25, 2020, but did not receive one until October 11, 2020, causing her to be "unable to efficiently and effectively assist her student with [their] remote learning." *Id.* ¶¶ 49, 52-53, 60.

On or about February 20, 2020, Butts filed a Special Education Complaint (Complaint #21K599) regarding a student who was left without a paraprofessional during Butts' lunch period, in violation of the student's Individualized Education Program ("IEP"). *Id.* ¶¶ 46-48. In June, Butts received an update on this complaint, stating generally that the administration was seeking a Japanese-speaking paraprofessional for the student. *Id.* ¶ 55. On September 30, 2020, Plaintiff's former student was given a new paraprofessional, Yozi Kuma ("Kuma"), an Ethiopian-born paraprofessional who does not speak Japanese. *Id.* ¶¶ 57, 61, 63. On October 14, 2020, Plaintiff learned that Kuma was being given special training in Japanese language training, that Kelch, Davis, and DOE never offered Plaintiff, who also does not speak Japanese. *Id.* ¶¶ 57, 63-64.

**C. 2021 School Year**

Plaintiff asserts that she worked an extra 11 minutes for 10 days early in the 2021 school year, which she was uncompensated for. *Id.* ¶ 86. Plaintiff filed a grievance about the unpaid time, which led to a binding arbitration award for Plaintiff to receive compensation for 55 minutes of work. *Id.* ¶¶ 87-88. Plaintiff asserts the DOE never made this payment to her. *Id.* ¶ 89.

In September 2021, Plaintiff's start time was changed to 8:09 am. *Id.* ¶ 72. Plaintiff claims she was the only staff member with this new start time. *Id.* In October 2021, Plaintiff had a meeting with Davis, where Davis asked Plaintiff to disregard her student's IEP by not providing

3

SPA-4

the student with the IEP's mandated therapy. *Id.* ¶ 82.   Butts asserts she refused this request via email. *Id.*  On November 3, Plaintiff emailed Inserra to restart UFT's once-a-month meetings. *Id.* ¶ 96.   In November 2021, on the same day that Plaintiff filed a 311 complaint about "Kelch's refusal to hire ESL teachers, COVID protocols and students' need for appropriate paraprofessionals consistent with their IEPs,"  Plaintiff received a letter of discipline written by Davis regarding professionalism in the workplace. *Id.* ¶¶ 97-98.   On November 9, 2021, Plaintiff attended a disciplinary meeting about "professionalism in the workplace" with Kelch and Davis, where Davis spoke vaguely about the "tone" of Plaintiff's emails. *Id.* ¶¶ 101-02.   When Plaintiff's union representative asked for clarification regarding the Chancellor's Regulation Plaintiff violated, Plaintiff asserts that Davis and Kelch could not identify any regulation. *Id.* ¶ 103.   On November 22, Plaintiff thereafter received another letter about "professionalism in the workplace" by Davis, a week after Plaintiff initiated and participated in a UFT meeting on November 16. *Id.* ¶¶ 107-08.

After these events, Plaintiff requested from Inserra, and ultimately filed, a Step 1 grievance relating to the disciplinary letters she had received. *Id.* ¶ 111.   The grievance was denied on December 6, 2021 and was not continued to a Step 2 grievance. *Id.*  Plaintiff also filed an Office of Equal Opportunity ("OEO") complaint against Kelch and Davis for continued unlawful harassment. *Id.* ¶ 112.   In December 2021, Plaintiff alleged that Kelch instructed staff members to ostracize Plaintiff, and that Kelch and Davis had begun harassing Brutus, a school counselor, and paraprofessional for not abiding by this instruction. *Id.* ¶ 114.   Plaintiff asserts that Brutus later confirmed on March 29, 2022, that Kelch and Davis directed staff to ostracize Plaintiff by not talking to her. *Id.* ¶ 148.

**D.  2022 School Year**

In January of 2022, the Office of Special Investigations ("OSI") "dealt with" Plaintiff's 311 complaint and her OEO complaint, but Plaintiff asserts that nothing was communicated to her regarding an investigation. *Id.* ¶¶ 126-27.  In February of 2022, Plaintiff filed a Special Education complaint because her student did not have paraprofessional coverage during Plaintiff's lunch break. *Id.* ¶ 130.  Despite being told that DOE had resolved this issue, Plaintiff's student was again without paraprofessional coverage for two days in March. *Id.* ¶¶ 132-34.  Plaintiff reached out to Mendez about this on March 1, and later that day received notice of a professionalism in the workplace discipline hearing from Kelch. *Id.* ¶ 135.  A notice rescheduling this discipline hearing was put in Plaintiff's mailbox instead of being hand-delivered on-time to her, and consequently, she missed the hearing. *Id.* ¶¶ 136-37.

On March 7, 2022, Plaintiff wrote an email to DOE following up on a previous 311 complaint she filed in February of 2022 about the school administration's potential falsification of student records where a student was given credit for a Spanish class the student never took. *Id.* ¶¶ 129, 141.  However, Plaintiff alleges that this email was deleted from Plaintiff's official DOE emails "by Kelch and Davis," and the subject of the email was never addressed. *Id.* ¶¶ 142-43.  In May of 2022, Plaintiff filed an OSI complaint against Kelch alleging Viktor Kurlyluk ("Kurlyluk") was being paid by "Kelch on DOE time" at a time "when all staff . . . were supposed to be attending professional development." *Id.* ¶ 149.  Additionally, during a Grievance Conference on November 3, 2022, Plaintiff asserts that she was falsely accused of abandoning a one-to-one student when, Kelch and "her subordinates" had removed said student from Plaintiff's care. *Id.* ¶ 153.  Additionally in November 2022, Plaintiff asserts that she discovered that the discipline letters issued to her by Kelch were missing from her DOE file. *Id.* ¶ 159.

SPA-6

"Upon information and belief," Plaintiff asserts that Davis and Kelch "warned and prohibited" Brutus from spending time with Plaintiff during her lunch break. *Id.* ¶ 182. Plaintiff alleges that Kelch and Davis accused Brutus of insubordination for allowing Plaintiff to spend her lunch in his office on November 21-23 and 28, and that he was disciplined with a written warning. *Id.* ¶¶ 184-85. Plaintiff claims she was disciplined for "identical insubordination" with a five-day suspension from December 19 through December 23 without pay. *Id.* ¶¶ 160, 185.

**E. 2023 School Year**

After a pre-motion conference on January 24, 2023, Plaintiff and UFT met on January 31, 2023, for a settlement discussion. *Id.* ¶ 190. Plaintiff asserts that during the meeting, counsel for UFT informed Plaintiff's counsel that "her clients did not intend to offer any money to [Plaintiff] in this litigation." *Id.* The next day, Plaintiff says she was presented with a letter terminating her employment with DOE effective that day, February 1, 2023. *Id.* ¶ 191.

Plaintiff alleges multiple of her complaints and grievances against the school did not reach resolution due to City Defendants. *See id.* ¶ 31 (no decision rendered and case unresolved regarding Plaintiff's grievance for lost wages as a result of the reduction of her lunch period), *id.* ¶ 154 (Defendants did not resolve two of Plaintiff's grievances), *id.* ¶ 89 (despite Plaintiff's salary grievance being found in her favor, DOE has not paid the award), *id.* ¶ 111 (Kelch denied Plaintiff's Step 1 grievance), *id.* ¶ 117 (DOE has not provided Plaintiff with a resolution to her OEO harassment filing), *id.* ¶ 127 (the Office of Special Investigations had a meeting with Plaintiff about her 311 and OEO complaints, but no outcome has been communicated to Plaintiff), *id.* ¶¶ 132-34 (despite the paraprofessional coverage issue being "resolved" Plaintiff's student was still left without coverage), *id.* ¶ 150 (nothing came out of Plaintiff's OSI complaint about Kurlyluk).[2]

---

[2] However, other claims reached resolution in her favor. *See* Compl. ¶ 28 (Chancellor's Representative found Kelch's conduct to be so egregious that Kelch was reprimanded, found in favor of Plaintiff, Plaintiff's lunch period time was

SPA-7

Plaintiff alleges Union Defendants prevented her grievances from reaching resolution.[3] *See id.* ¶¶ 38-40 (UFT emailed Plaintiff appearing to deny one of her grievances which is still unresolved), *id.* ¶ 111 (Kelch did not properly pursue or follow up on Step 2 grievance), *id.* ¶¶ 120-24 (UFT Grievance Committee denied Plaintiff's Step 1 grievance from reaching Step 2; a Grievance Committee member informed Plaintiff she sent "too many emails to Kelch;" UFT informed Plaintiff that her Step 2 grievance was denied but provided no written communication or explanation), *id.* ¶ 125 (Plaintiff reached out to UFT and Kalogeras about her 311 complaints, but they did not take any action), *id.* ¶ 154 (Defendants did not resolve two of Plaintiff's grievances), *id.* ¶ 155 (UFT did not take a grievance from Step 2 to binding arbitration).

However, Plaintiff also says that the Union Defendants assisted some of her grievances. *See id.* ¶ 45 (Kalogeras informed Plaintiff she would eventually receive an elevator pass), *id.* ¶ 103 (Plaintiff's union representative advocated for Plaintiff), *id.* ¶ 110 (Inserra filed a Step 1 grievance on behalf of Plaintiff).

Lastly, Plaintiff alleges that DOE and UFT repeatedly breached provisions of the CBA. *See id.* ¶ 50 (Plaintiff asked to sign a document, "apparently in violation of the CBA"), *id.* ¶ 73 (Plaintiff was the only paraprofessional doing bus duty without another teacher or administrator present "contrary to the CBA"), *id.* ¶ 92 (Plaintiff was left in the cafeteria with a student without a teacher or work assignments for 6 hours and 20 minutes "in breach of the CBA"), *id.* ¶ 95

---

fully restored), *id.* ¶ 87 (Plaintiff's salary grievance was found in her favor "[a]s a result of [Plaintiff]'s persistence, though DOE never paid Plaintiff's award[.]").

[3] Though not its own cause of action, Plaintiff additionally alleges UFT breached its duty of fair representation. *See* Compl. ¶ 5 ("UFT with its agents, consistently breached its duty of fair representation to [Plaintiff]"), *id.* ¶ 34 (Welch did nothing to stop Kelch), *id.* ¶ 74 (Kalogeras did not respond to Plaintiff's email about her being the only paraprofessional on bus duty without a licensed teacher or administrator present, in breach of the CBA), *id.* ¶ 109 (Plaintiff emailed Kalogeras about harassment and work environment but received no help from him or UFT), *id.* ¶ 140 (Kalogeras did not take any steps to address Inserra's inadequate representation of Plaintiff).

7

SPA-8

(Plaintiff had to wait outside in the cold for 35 minutes without a licensed teacher or administrator "in violation of the CBA").

## PROCEDURAL HISTORY

On June 17, 2022, Plaintiff commenced this action by filing an Amended Complaint in New York State Supreme Court, Kings County, and the action was subsequently removed to the District Court on June 27, 2022. *See* Notice of Removal, ECF 1. The attorneys for Individual Defendants filed the notices of appearance on August 9, 2022. *See* Notice of Appearance, ECF 8; Notice of Appearance, ECF 9. On August 11, 2022, City Defendants made their first motion for pre-motion conference and sought leave to file a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). *See* Motion for Pre-Motion Conference, ECF 10. On September 13, 2022, the Court ordered the case to be referred to mediation. *See* Order Referring Case to Mediation, ECF 13. The attorney for UFT filed a notice of appearance on October 13, 2022, and UFT filed a motion for pre-motion conference on October 21, 2022. *See* Notice of Appearance, ECF 16; Motion for Pre-Motion Conference, ECF 17. On November 10, 2022, UFT filed a motion to stay discovery. *See* Motion to Stay, ECF 22.

Plaintiff filed a second amended complaint against all defendants on December 12, 2022. *See* Second Amended Complaint ("SAC"), ECF 24. On January 12, 2023, City Defendants moved to dismiss the Amended Complaint for failure to state a claim. *See* Motion to Dismiss for Failure to State a Claim, ECF 26. After Plaintiff filed a motion for joinder on January 14, 2023, the Court granted Plaintiff the motion on February 14, 2023. *See* Motion for Joinder, ECF 29; Order on Motion for Joinder, electronic order dated Feb. 14, 2024.

Subsequently, Plaintiff filed a third amended complaint on February 17, 2023. *See* TAC, ECF 33. Following the third amended complaint, the attorney for Union Defendants filed another

8

SPA-9

notice of appearance on March 28, 2023. Notice of Appearance, ECF 28. The case was reassigned to Judge Orelia E. Merchant on July 6, 2023. On November 9, 2023, City Defendants moved to dismiss the Complaint for failure to state a claim, accompanied by an affidavit and memoranda in support of the motion. *See* City Defendants' Notice of Motion to Dismiss ("City Defs. MTD"), ECF 50; Declaration of Elisheva L. Rosen in Support of City Defendants' Motion to Dismiss the Third Amended Complaint ("City Defs. Aff."), ECF 51; City Defendants' Memorandum of Law in Support of City Defendants' Motion to Dismiss the Third Amended Complaint ("City Memo"), ECF 52; DOE Defendants' Reply Memorandum of Law in Further Support of Their Motion to Dismiss ("City Defs. Reply Memo"), ECF 53. The Union Defendants also moved to dismiss for failure to state a claim a day later, on November 10, 2023. *See* Notice of Union Defendants' Motion to Dismiss the Third Amended Complaint ("Union Defs. MTD"), ECF 54; Declaration Ariana A. Donnellan in Support of Motion to Dismiss by Union Defendants ("Union Defs. Aff."), ECF 56; Memorandum of Law in Support of Union Defendants' Motion to Dismiss the Third Amended Complaint ("Union Memo"), ECF 57; Reply Memorandum of Law in Further Support of Union Defendants' Motion to Dismiss the Third Amended Complaint ("Union Defs. Reply Memo"), ECF 58. On the same day, November 10, 2023, Plaintiff filed two memoranda in opposition to the motions to dismiss. *See* Plaintiff's Memorandum of Law in Opposition to City Defendants' Motion to Dismiss the Third Amended Complaint ("Pl. Opp. City Defs."), ECF 59; Plaintiff's Memorandum of Law in Opposition to Union Defendants' Motion to Dismiss the Third Amended Complaint ("Pl. Opp. Union Def."), ECF 60. On April 11, 2024, the Plaintiff filed a supplemental memorandum and City Defendants replied in opposition on April 25, 2024. *See* Plaintiff's Supplemental Memorandum of Law ("Pl. Supp. MOL"), ECF 62; Reply in Opposition ("City Defs. Reply"), ECF 63.

**LEGAL STANDARD**

Federal Rule of Civil Procedure 12(b)(6) permits a defendant to make a motion to dismiss for "failure to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* While "detailed factual allegations" are not required, to overcome a motion to dismiss a plaintiff must plead more than "labels and conclusions," a "formulaic recitation of the elements of a cause of action," "'naked assertion[s]' devoid of 'further factual enhancement,'" or "conclusory statements." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

When ruling on a motion to dismiss in the Second Circuit, a court "must 'accept[] as true the factual allegations of the complaint and draw all inferences in the plaintiff's favor.'" *Moore v. Newton*, 14-CV-6473 (MKB) (CLP), 2016 WL 11445696, at *4 (E.D.N.Y. Sept. 7, 2016) (cleaned up). However, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

A court should grant a Rule 12(b)(1) motion to dismiss if the court is not authorized to adjudicate the plaintiff's claims. *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) ("A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."); *see Duncanson v. N.Y. State Educ. Dep't*, 13-CV-6030 (CBA) (JMA), 2015 WL 631374, at *5 (E.D.N.Y. Feb. 12, 2015). The party asserting subject matter jurisdiction has the burden of proving its existence by a

SPA-11

preponderance of the evidence. *Id.* (citing *Makarova*, 201 F.3d at 113). Furthermore, in determining whether subject matter jurisdiction exists, the court may look to evidence outside the complaint. *See Kamen v. American Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986); *Duncanson*, 2015 WL 631374, at *5.

## DISCUSSION

### A. Section 1983 Claims Brought Against Individual City Defendants

Section 1983, in relevant part, allows an action at law against a "person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws . . . ." 42 U.S.C. § 1983. "Most of the core substantive standards that apply to claims of discriminatory conduct in violation of Title VII are also applicable to claims of discrimination in employment in violation of . . . the Equal Protection Clause." *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004). However, there are differences between Title VII and Section 1983—namely in establishing municipal and individual liability—which are relevant here.

Personal involvement of the individual defendants "in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Provost v. City of Newburgh*, 262 F.3d 146, 154 (2d Cir. 2001) (quoting *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)). It is well settled that, to establish a defendant's individual liability in a suit brought under Section 1983, a plaintiff must show "the defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013). Thus, "plaintiff must [] allege a tangible connection between the acts of a defendant and the injuries suffered."

11

*Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986); *Gordon v. Niagara Wheatfield Cent. Sch. Dist.*, 22-CV-00172 (JLS) (MJR), 2023 WL 652021, at *11 (W.D.N.Y. Aug. 22, 2023).

 1.  **Section 1983 Claims for Hostile Work Environment Fail Against the Individual City Defendants**

Section 1983, through its application of the Equal Protection Clause of the Fourteenth Amendment, "protect[s] public employees from various forms of discrimination, including hostile work environment and disparate treatment" on the basis of race. *Demoret v. Zegarelli*, 451 F.3d 140, 149 (2d Cir. 2006); *Littlejohn v. City of New York*, 795 F.3d 297, 320 (2d Cir. 2015).

To establish a hostile work environment claim under Section 1983, a plaintiff must show that her workplace was "permeated with 'discriminatory intimidation, ridicule, and insult . . . that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Howley v. Town of Stratford*, 217 F.3d 141, 153 (2d Cir. 2000) (citation omitted) (omission in original).[4] A "plaintiff must show both that the environment was objectively hostile and that the plaintiff subjectively perceived it to be hostile." *Raniola v. Bratton*, 243 F.3d 610, 620 (2d Cir. 2001) (citation omitted). Additionally, a plaintiff "must demonstrate either that a single incident was extraordinarily severe, or that a series of incidents were 'sufficiently continuous and concerted' to have altered the conditions of her working environment." *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002) (citations omitted). The incidents "must be more than episodic." *Id.* (citation and quotation marks omitted).

The sum of Plaintiff's allegations as to a hostile work environment against the Individual City Defendants, rest on meetings discussing professionalism and the fact that letters regarding

---

[4] *See Freud v. New York City Dep't of Educ.*, 21-CV-2281 (MKV), 2022 WL 889213, at *10 (S.D.N.Y. Mar. 25, 2022) ("Hostile work environment claims are subject to the same standard whether alleged under Title VII, Section 1983 or the SHRL."); *Jadallah v. N.Y.C. Dep't of Educ.*, 21-CV-6390 (DG) (VMS), 2023 U.S. Dist. LEXIS 670, at *16 (E.D.N.Y. Jan. 3, 2023).

discipline were not found in Plaintiff's personnel file.  TAC ¶¶ 102-04; 107, 156-63.  Plaintiff also asserts that "KELCH forbid[] BUTTS from spending her duty-free lunch period with Mr. Brutus, and suspend[ed] BUTTS from December 19, through December 23, 2023, without pay, for failing to carry out KELCH's illegal instruction [, which constituted] further harassment and creation of a hostile work environment."  TAC ¶ 160.

These facts simply do not amount to objectively pervasive harassment.  *See, e.g, Fleming v. MaxMara USA, Inc.*, 371 F. App'x 115, 119 (2d Cir. 2010) (concluding that no hostile work environment existed even though "defendants wrongly excluded [the plaintiff] from meetings, excessively criticized her work, refused to answer work-related questions, arbitrarily imposed duties outside of her responsibilities, threw books, and sent rude emails to her."); *see also Davis–Molinia v. Port Auth. of N.Y. & N.J.*, 08-CV-7586 (GBD), 2011 WL 4000997, at *11 (S.D.N.Y., Aug. 19, 2011) *aff'd*, 488 F. App'x 530 (2d Cir. 2012) (finding that "diminished [job] responsibilities," "exclu[sion] from staff meetings," deliberate "avoid[ance]," "yell[ing] and talk[ing] down to," and an increased workload of menial tasks, among other factors, was not enough to show that defendants' conduct was sufficiently severe or pervasive).  Federal discrimination law does "not set forth a general civility code for the American workplace." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (internal quotation marks omitted); *accord Agosto v. N.Y.C. Dep't of Educ.*, 982 F.3d 86, 102 (2d Cir. 2020).  "[A]n employer has no obligation to insure [sic] a pleasant work environment, nor to act on any employee complaint of unfairness or derogatory treatment by co-workers." *Rivera v. Brooklyn Hosp. Med. Ctr.*, 28 F. Supp. 3d 159, 162 (E.D.N.Y. 2014).

Moreover, Plaintiff's TAC fails to allege that any of the alleged harassment was based on Plaintiff's membership in a protected class, whether it be her race, sex, or national origin.  It is

SPA-14

"axiomatic that the plaintiff also must show that the hostile conduct occurred *because* of a protected characteristic." *Tolbert v. Smith*, 790 F.3d 427, 439 (2d Cir. 2015) (emphasis added). That is, "[t]o establish a hostile work environment, a plaintiff must [] demonstrate that the discriminatory conduct occurred because of her membership in a protected class." *White v. Manhattan & Bronx Surface Transit Operating Auth.*, 18-CV-3627 (GBD), 2022 WL 4227289, at *8 (S.D.N.Y. Sept. 13, 2022) (citing *Alfano*, 294 F.3d at 374); see *Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001) ("It is axiomatic that mistreatment at work, whether through subjection to a hostile environment or through such concrete deprivations as being fired or being denied a promotion, is actionable under Title VII only when it occurs because of an employee's sex, or other protected characteristic."). Accordingly, Plaintiff's Section 1983 hostile work environment claims against the Individual City Defendants are dismissed.

**2. Section 1983 Claims for Gender and Racial Discrimination Fail Against the Individual City Defendants**

Plaintiff bears the initial burden of establishing a prima facie case of discrimination by showing: "(1) [s]he belonged to a protected class; (2) [s]he was qualified for the position [s]he held; (3) [s]he suffered an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent." *Tolbert*, 790 F.3d at 435; *see al*so *Brown v. City of Syracuse*, 673 F.3d 141, 150 (2d Cir. 2012) (citation omitted). The Second Circuit has "characterized the evidence necessary to satisfy this initial burden as 'minimal' and 'de minimis.'" *Zimmermann v. Assocs. First Cap. Corp.*, 251 F.3d 376, 381 (2d Cir. 2001) (citations omitted).

As an initial matter, this Court accepts here that Plaintiff belongs to the following protected classes: gender (female), race (Black), and national origin (American). Plaintiff alleges three adverse employment actions taken by the Individual City Defendants. First, Plaintiff alleges that

14

after Plaintiff and her co-worker Brutus spent an off-duty lunch together, they were inconsistently "punished" for such "insubordination." She says while Brutus, a male, simply received a written warning, the Individual City Defendants issued Plaintiff a five-day suspension without pay from December 19 through December 23, 2022. TAC ¶¶ 181-87. Second, Plaintiff discusses the fact that she was not given an elevator pass upon request but instead had to provide a doctor's note— something she alleges "no one else had to do." *Id.* ¶¶ 37, 41-45. Third, Plaintiff notes that one of her students got reassigned to another paraprofessional, an Ethiopian-born individual, who was provided with Japanese lessons. TAC ¶¶ 61-64. Plaintiff complains she was never offered such an opportunity. *Id.* ¶ 63.

Yet the TAC entirely fails to carry even the *de minimus* burden of establishing that any of these actions give rise to an inference of discriminatory intent on the basis of Plaintiff's race, gender, or ethnicity. *Zimmermann*, 251 F.3d at 381. As to the Brutus matter, Plaintiff alleges that Brutus informed her that Individual Defendants directed other employees to "ostracize[]" her, TAC ¶ 148, and that they found "Brutus to have been insubordinate on November 21, 22, 23 and 28, 2022, when Mr. Brutus allowed BUTTS to spend her duty-free lunch in Mr. Brutus's office[.]" *Id.* ¶ 184. But Plaintiff does not establish that such a treatment was predicated on any protected status. The TAC is simply devoid of any allegation that her suspension was based on her gender, race, or national origin.

Likewise, Plaintiff's claims centered on the denial of an elevator pass do not pass the pleading stage because "trivial harms" or "petty slights or minor annoyances" do not constitute materially adverse employment action. *Tepperwien v. Entergy Nuclear Operations*, *Inc.*, 663 F.3d 556, 568 (2d Cir. 2011) (citation omitted); *Rasko v. New York City Admin. for Children's Servs*., 734 F. App'x 52, 55 (2d Cir. 2018); *see Rivera v. Rochester Genesee Reg'l Transp. Auth*., 743

F.3d 11, 25-26 (2d Cir. 2014) (holding that an employer's failure to give an employee a half day off for a doctor's appointment—even when combined with other actions—was insufficient to constitute an adverse employment action in the retaliation context).

Accordingly, Plaintiff has failed to state a Section 1983 claim for gender, racial, or ethnic discrimination.

### 3. Section 1983 Claims for Retaliation Fail Against the Individual City Defendants

To establish a *prima facie* case of unlawful retaliation under Section 1983, "an employee must show that (1) [s]he was engaged in protected activity; [and] (2) the employer was aware of that activity; (3) the employee suffered a materially adverse action; and (4) there was a causal connection between the protected activity and that adverse action." *Gonzalez v. City of New York*, 377 F. Supp. 3d 273, 290 (S.D.N.Y. 2019) (quoting *Rivera*, 743 F.3d at 24; *see also Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 91 (2d Cir. 2015) ("[F]or a retaliation claim under § 1983 to survive a . . . motion to dismiss, the plaintiff must plausibly allege that: (1) defendants acted under the color of state law, (2) defendants took adverse employment action against h[er], (3) because [s]he complained of or otherwise opposed discrimination.").

"Retaliation occurs when an employer takes action against an employee not because of [her protected classification], but because [s]he engaged in protected activity—complaining about or otherwise opposing discrimination." *Vega*, 801 F.3d at 91. The activity complained of must be one that is prohibited by the statute under which Plaintiff brings her claims. *See Mi-Kyung Cho v. Young Bin Cafe*, 42 F. Supp. 3d 495, 508 (S.D.N.Y. 2013) ("Protected activity . . . is limited to actions which complain or oppose the discriminatory practices prohibited under [the] statutes [upon which plaintiff brings her claims].")"; *see also id.* at n.6 (stating that complaints for violations of constitutional rights must be brought under § 1983).

16

SPA-17

Therefore, under Section 1983, the complaint must be that Plaintiff was deprived of her constitutionally protected rights. *See Wimmer v. Suffolk Cnty. Police Dep't*, 176 F.3d 125, 134-35 (2d Cir. 1999) (rejecting §1983 retaliation claim where plaintiff failed to allege a violation of his constitutional rights); *see also Vega*, 801 F.3d at 91 (finding §1983 retaliation claim plausibly alleged where adverse employment actions were taken shortly after plaintiff complained of *racial discrimination*); *Gonzalez*, 337 F. Supp. 3d at 292 (complaints of racial discrimination constitute protected activity); *Rivera*, 743 F.3d at 17, 25 (complaints of harassment on account of race and national origin constitute protected activity). Plaintiff need only "have had a good faith belief that the challenged conduct on the part of [her] employer was prohibited by the statute, even if, in actuality, it was not." *Jaeger v. N. Babylon Union Free Sch. Dist.*, 191 F. Supp. 3d 215, 232 (E.D.N.Y. 2016).

Plaintiff has failed to allege that she was engaged in a protected activity. Plaintiff's retaliation claim against the Individual City Defendants rests on the assertion that Plaintiff (1) made the following complaints:

- a Union grievance against Kelch for reducing her lunch period by 15 minutes, TAC ¶ 27;
- a Step 2 grievance for the salary lost during this time, *id.* ¶ 31;
- and a Step 1 grievance against Kelch regarding a disciplinary letter received by Plaintiff, *id.* ¶¶ 110-11;
- a Special Education Complaint regarding a student that was left without a paraprofessional, *id.* ¶ 46;
- a 311-complaint regarding "numerous improprieties at the school," *id.* at 97, a 311-complaint against Kelch for the suspected "falsification of student's records," *id.* ¶ 129;
- a Special Commission of Investigation ("SCI") complaint against Kelch because the school did not have certain critical education teachers, *id.* ¶145; and
- an OEO complaint against Kelch and Davis for "continued unlawful harassment, *id* 112;

17

(2) advocated on behalf of students with disabilities; (3) associated with Brutus; and (4) filed "whistleblower" complaints, the contents of which are unspecified. TAC ¶¶ 178-79. These actions are not protected activity because Plaintiff's complaints were not "about or otherwise opposing discrimination." *See Vega*, 801 F.3d at 91; *see also Jaeger*, 191 F. Supp. at 232 (complaint must be "sufficiently specific so that the employer is put on notice that the plaintiff believes [s]he is being discriminated against[.]" (internal citations and quotations omitted)). Nowhere in the pleadings does Plaintiff allege she made complaints that the Individual City Defendants discriminated against her on the basis of her race or gender, or otherwise violated Plaintiff's constitutional rights. Therefore, without an allegation of protected activity, Plaintiff has failed to state a claim for retaliation under Section 1983 against the Individual City Defendants.

**B. Section 1981 and Section 1983 Claims Brought Against the DOE**

**1. Plaintiff Fails to Allege a Section 1981 Claim Against the DOE**

Plaintiff brings Section 1981 claims against the DOE for discrimination, hostile work environment, and retaliation. *See generally* TAC. The DOE argues that Section 1981 does not provide a separate right of action against state actors and so these claims should be dismissed. City Memo at 8 (*citing Duplan v. City of New York*, 888 F.3d 612, 621 (2d Cir. 2018)). In response, Plaintiff asserts that *Duplan* is an incorrect statement of law. Pl. Opp. City Defs at 9. Plaintiff does not provide further argument as to the DOE, but merely asserts it has also brought claims against the Individual City Defendants in both their individual and official capacities. *Id.* at 10.

Although Plaintiff asserts Section 1981 claims against the DOE, Section 1983 is "the exclusive federal damages remedy for the violation of the rights guaranteed by [Section 1981] when the claim is pressed against a state actor." *Jett v. Dall. Indep. Sch. Dist.*, 491 U.S. 701, 735

(1989); *Duplan* 888 F.3d at 616 (same). Accordingly, Plaintiff's Section 1981 damages claim against the DOE fails.[5]

### 2. Plaintiff Fails to Satisfy the Monell Requirement Under Section 1983

To allege municipal liability under Section 1983, a plaintiff must satisfy the three elements of a Monell claim. *See Mitchell v. N.Y. City Dep't of Educ.*, 20 Civ. 1555 (PGG) (SLC), 2021 WL 8013770, at \*11 (S.D.N.Y. May 7, 2021). These elements are "(1) a municipal policy or custom that (2) causes the plaintiff to be subjected to (3) the deprivation of a constitutional right." *Agosto v. N.Y.C. Dep't of Educ.*, 982 F.3d 86, 97 (2d Cir. 2020). "A government should only be held responsible when, and only when, their official policies cause their employees to violate another person's constitutional rights." *Mitchell*, 2021 WL 8013779, at \*11 (internal citations & quotation marks omitted) (finding that plaintiff failed to state a claim against DOE "because the Complaint does not identify a municipal policy that allegedly caused the constitutional violation.").

Plaintiff has failed to satisfy the first element of a Monell claim: the existence of a municipal policy or custom. "A plaintiff may satisfy the policy or custom prong in one of four ways: by alleging the existence of 1) a formal policy; 2) actions taken or decisions made by final municipal policymakers that caused the violation of plaintiff's rights; 3) a practice so persistent and widespread that it constitutes a custom or usage and implies the constructive knowledge of policymakers; or 4) a failure to properly train or supervise municipal employees that amounts to deliberate indifference to the rights of those with whom municipal employees will come into contact." *Gonzalez v. City of N.Y.*, 442 F. Supp. 3d 665, 684 (S.D.N.Y. 2020); *aff'd*, 845 F. App'x

---

[5] To the extent that Plaintiff seeks an injunction against continued harassment and retaliation, TAC at 27 (prayer for relief), she has also claimed that she was terminated. Injunctive relief is not the appropriate remedy when a defendant has ceased the wrongful activity and there is no likelihood of repetition. *Burndy Corp. v. Teledyne Indus., Inc.*, 748 F.2d 767, 774 (2d Cir. 1984). There is no continuing violation for which Plaintiff has asserted a plausible Section 1981 claim and therefore injunctive relief cannot be granted.

11 (2d Cir. 2021) (internal quotations and citations omitted).  Nowhere in the complaint does Plaintiff refer to a "formal policy"—in fact, the word "policy" does not appear a single time.  *See generally TAC*.  Plaintiff also does not claim there is a persistent and widespread practice that might imply the constructive knowledge of policymakers.  *See id; Sylla v. N.Y. City Dep't of Educ*., 664 F. Supp. 3d 311, 330 (E.D.N.Y. 2023) ("To establish a 'practice[ ] so persistent and widespread as to practically have the effect of law,' a plaintiff may point to evidence of misconduct that was 'sufficiently widespread and persistent to support a finding that [the acts] constituted a custom, policy, or usage of which supervisory authorities must have been aware.").  Nor does Plaintiff show that the DOE's conduct, through Kelch and Davis' allegedly discriminatory acts, was "a practice so persistent and widespread that it constitutes a custom or usage and implies the constructive knowledge of policymakers," as Plaintiff only makes allegations concerning her own experience.

Even in the absence of an official policy or custom, "a municipality may be liable for the acts of a single official—but only if that official is someone 'whose edicts or acts may fairly be said to represent official policy' for the entire municipality." *Agosto*, 982 F.3d at 98 (citing *Monell*, 436 U.S. at 694); *accord Gonzalez*, 442 F. Supp. 3d at 685.  "It is not enough that an official had discretion to make a decision that was unreviewable.  Rather, the official must have been sufficiently high up in the municipal hierarchy that he was responsible under state law for making policy in that area of the municipality's business . . . .  Stated another way, the official must have had state-law authority to adopt rules for the conduct of the municipal government." *Id.* (internal citations & quotation marks omitted).

Plaintiff does not plead that the Individual City Defendants had any policy-making authority.  *See Littlejohn*, 795 F.3d at 315 (finding that the isolated acts of an individual employee

20

who was not "a final municipal policymaker" do not "represent official City policy."). Plaintiff says that Kelch and Davis were Plaintiff's supervisors and served as the principal and assistant principal, respectively. TAC ¶¶ 15-17. However, Plaintiff fails to show that Individual City Defendants had sufficient state-law authority to adopt rules for the conduct of the DOE. "Alleged discrimination of an employee by a principal or assistant principal well below the policy-making role of the DOE Chancellor, does not meet any of the requirements to be an actionable DOE policy." *Jadallah v. N.Y.C. Dep't of Educ.*, 2024 U.S. Dist. LEXIS 58410, at *29 (E.D.N.Y. Mar. 28, 2024); *see also Kuperman v. City of New York,* 2021 U.S. Dist. LEXIS 185702, at *5 (S.D.N.Y. 2021) ("school principals are as a matter of law not 'final policymaker[s]' for the New York City Department of Education for purposes of Monell"); *Agosto*, 982 F.3d 86 (2d Cir. 2020) (holding that the DOE Chancellor was the final decisionmaker for purposes of Monell liability).

Because Plaintiff has not alleged that she suffered from discrimination based on a municipal policy or custom, Plaintiff's claims for municipal liability under Sections 1981 and 1983 fail. *See Rutherford v. Westchester Cty.*, 18-CV-4872 (KMK), 2020 WL 433841, at *12 (S.D.N.Y. Jan. 28, 2020) (finding that the plaintiff could not state a consistent and widespread practice "simply by alleging his own experiences and then extrapolating to the entire jail population"). The Court dismisses all of Plaintiff's Sections 1981 and 1983 claims against Defendant DOE.

### C.  Breach of Collective Bargaining Agreement Under the LMRA Claims Fail Against DOE and UFT

Plaintiff asserts a "breach of contract" claim against the City Defendants and Union Defendants for "failing to abide by the CBA provision for the discipline of staff and denying [her] her rights under the CBA" and for allegedly failing to file grievances on Plaintiff's behalf. TAC ¶¶ 165-66. Plaintiff's allegation of a breach of the CBA "against DOE and UFT" fails to specify that she raises this cause of action under the LMRA in the TAC. However, the Court construes

the allegations as an attempt to bring a hybrid LMRA claim against her employer the DOE and Union. *See* TAC at 23.

Both the City Defendants and Union Defendants argue that this claim fails because the LMRA does not apply to government entities and agencies, such as the DOE[6] and the Union. City Memo at 14; Union Memo at 6. Plaintiff has admitted this in her memorandum: "City Defendants … argue that the court must dismiss the Plaintiff's LMRA claim because it does not apply to DOE which is a government entity… Plaintiff concedes this point." Pl's Opp. City Defs' Mot. at 33. Plaintiff further conceded at oral argument that this Court has no subject matter jurisdiction over this claim: "My understanding is that it is the duty of fair representation, that is the LMLR [*sic*] claim, that the Court has no subject matter jurisdiction over. We're not pressing that. We concede that." OA 17:11-14.

This Court agrees. Claims for breach of a CBA[7] by employees against employers are governed by Section 301 of the Labor Management Relations Act ("LMRA" or "29 U.S.C. 185").[8] *See Tand v. Solomon Schechter Day Sch. of Nassau Cty.*, 324 F. Supp. 2d 379, 382 (E.D.N.Y. 2004). Hybrid LMRA claims ("§ 301/DFR claims") or hybrid § 301/fair representation claims, "contain[] allegations against both the employer and the union." *Id.* at 121. "To establish a hybrid

---

[6] DOE is exempt from the LMRA as a public employer. *See Cunningham v. Local 30, Int'l Union of Operating Engineers*, 234 F. Supp. 2d 383, 395 (S.D.N.Y. 2002) ("Courts have held that they lack subject matter jurisdiction over hybrid claims by public employees because a public employer is not an 'employer' within the meaning of the LMRA." (internal citations omitted)); *Ford*, 579 F.3d at 188 (under the LMRA, "any State or political subdivision thereof," here, DOE, is exempted from the statute's definition of "employer."); *see* 29 U.S.C. § 152(2). "[I]t is now well-settled in the Second Circuit that, since political subdivisions of the States are not considered to be 'employers' under either the LMRA …, the federal courts lack subject matter jurisdiction over hybrid breach of collective bargaining agreement/duty of fair representation claims brought by their employees." *Ahmad*, 2019 U.S. Dist. LEXIS 118032, at *40-41 (quoting *Richardson v. City of Niagara Falls*, No. 09-CV-824, 2012 U.S. Dist. LEXIS 2661, 2012 WL 75771, at *7 (W.D.N.Y. Jan. 10, 2012))). Therefore, DOE is not an employer under 29 USCS § 152(1) such that even if Plaintiff could allege an LMRA claim, this Court does not have subject matter jurisdiction to hear it.

[7] A collective bargaining agreement, or CBA, is "a contract between an employer and a labor union that regulates employment conditions, wages, benefits, and grievances." *Pilchman v. Am. Fedn. & Mun. Emples.*, 2011 U.S. Dist. LEXIS 111538, *42 (S.D.N.Y. Sept. 29, 2011).

[8] Plaintiff only mentions the LMRA briefly in the first paragraph of her Complaint. *See* TAC at 23.

§ 301/DFR claim, a plaintiff must prove both (1) that the employer breached a collective bargaining agreement and (2) that the union breached its duty of fair representation vis-a-vis the union members." *Nunes v. United Bhd. & Joiners of Am.*, 20-CV-01092 (ALC) (SDA), 2020 U.S. Dist. LEXIS 199012, at *17 (S.D.N.Y. Oct. 23, 2020) (internal citations omitted). "Although an employee's hybrid cause of action under Section 301 'as a formal matter, comprises two causes of action,' the two claims are 'inextricably interdependent.'" *Vaughn v. Metro. Transp. Auth.*, 2023 U.S. Dist. LEXIS 52062, at *12 (S.D.N.Y. 2023) (quoting *DelCostello*, 462 U.S. 151, 164 (1983)). Therefore, "[i]f the plaintiff is unable to prove *either* of his claims, the *entire* cause of action must fail." *Baumgart v. Stony Brook Children's Serv., P.C.*, U.S. Dist. LEXIS 32389, at *13 (E.D.N.Y. 2005).

However, without addressing whether the elements of a hybrid § 301/DFR claim are met, Plaintiff's CBA claim fails for another reason.  Public employees are not covered by the LMRA. 29 U.S.C.S. § 152(2)(3); *Ford v. D.C. 37 Union Local 1549*, 579 F.3d 187, 188 (2d Cir. 2009) ("the language of the LMRA makes plain, public employees are not covered by that statute"). Plaintiff, as a public employee, is exempt from the scope of the LMRA and therefore her CBA claim must be dismissed in its entirety.  *See Malast v. Civil Serv. Employees Ass'n, Inc., Local 830, AFSCME, AFL-CIO*, 474 F. App'x 829 (2d Cir. 2012) ("public employees may not bring federal duty-of-fair representation ('DFR') claims or claims under Section 301 of the LMRA, 29 U.S.C. § 185." (internal citations omitted)); *see e.g. Green v. Dep't of Educ.*, 2020 U.S. Dist. LEXIS 106441, at *18-19 (S.D.N.Y. 2020) (where plaintiff pled he is a public employee, the court found his LMRA claim should be dismissed for lack of subject matter jurisdiction).

For the aforementioned reasons, Plaintiff's breach of collective bargaining agreement claims against DOE and UFT are dismissed.

23

**D.  Section 1981, 1983, 1985 Claims Against Union Defendants**

**1.    Section 1983 Claims Fail Against the Union Defendants**

As an initial matter, to state a claim under Section 1983, Plaintiff must allege that he was injured by either a *state actor* or a *private party acting under the color of state law*.  *See Ciambriello v. County of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002) (emphasis added).  Plaintiff's complaint is devoid of any allegation that the UFT is a state actor, nor that the Individual Union Defendants Welch, Inserra, Kalogeras were private citizens acting under the color of the law.  Rather, according to the third amended complaint as to the Union Defendants, the Plaintiff alleges the following:

- UFT is a labor union or labor organization as defined by law.
- At all times relevant to this lawsuit, UFT was the sole bargaining agent for BUTTS as a paraprofessional employed by DOE.
- At all times mentioned herein, UFT was responsible for representing BUTTS under the CBA in her employment related disputes and grievances with DOE.
- At all times mentioned herein, WELCH was a UFT Chapter Leader who handled some of BUTTS' union grievances against DOE and its agents.
- At all times mentioned herein, INSERRA was a UFT Chapter Leader who handled some of BUTTS' union grievances against DOE and its agents.
- At all times mentioned herein, KALOGERAS was a UFT District Representative who had a supervisory role over the grievances handled for BUTTS by the UFT and the Chapter Leaders.

TAC ¶¶ 19-24.

As it relates to the UFT, "labor [u]nions generally are not state actors."  *Marrero v. City of NY*, 02-CV-6634 (DLC), 2003 WL 1621921, at *4 (S.D.N.Y. Mar. 28, 2003) (citing *Ciambriello*, 292 F.3d at 323).  And the fact that the Union represents public employees does not make it a state actor.  *See id.*  With respect to the Individual Union Defendants—the UFT representatives—Plaintiff is suing them both individually and in their official capacities.  But conduct by the Individual Union Defendants made in their capacity as union officials does not transform their actions into "state action."  *See Rosenberg v. City of N.Y.*, 09-CV-4016 (CBA) (LB), 2011 U.S.

24

Dist. LEXIS 112818, at *22 (E.D.N.Y. Sep. 30, 2011). Plaintiff's TAC is devoid of any plausible allegation that the Union Defendants—private entities/persons—were acting under color of state law. *See Dorcely v. Wyandanch Union Free Sch. Dist.*, 06-CV-1265 (DRH) (AKT), 2007 U.S. Dist. LEXIS 71068, at *11 (E.D.N.Y. Sep. 25, 2007). Plaintiff has therefore failed to support her Section 1983 claims.

However, if a plaintiff pleads a conspiracy claim, there may be relief under Section 1983. While "[i]n general, unions are not state actors," they "may be liable in 1983 actions if they conspire with state officials." *Dimps v. Dist. Council 37 AFSCME, ALF-CIO*, 01-CV-1735 (DC), 2002 WL 206992, at *3 (S.D.N.Y. Feb. 8, 2002).[9] "However, if the conspiracy claims are 'too conclusory to establish a conspiracy' then a § 1983 claim cannot stand against a private entity." *Catania v. United Fed'n of Teachers*, 21-CV-1257 (GHW) (JW), 2023 U.S. Dist. LEXIS 73772 at *9 (S.D.N.Y. Apr. 26, 2023) (internal citation omitted).

"In order to survive a motion to dismiss on [a] § 1983 conspiracy claim, [a plaintiff] must allege (1) an agreement between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Ciambriello*, 292 F.3d at 324-25. A private actor who "engaged in a conspiracy with state officials to deprive another of federal rights" acts under color of state law for the purposes of § 1983. *Tower v. Glover*, 467 U.S. 914, 920 (1984). Thus, "[a] merely conclusory allegation that a private entity acted in concert with a state actor does not suffice to state a § 1983 claim against the private entity." *Ciambriello*, 292, F.3d. at 324; *accord Lamont v. City of New York*, 12-CV-2478, 2014 WL

---

[9] However, "[a]lthough a plaintiff may assert a civil conspiracy claim under § 1983 for the deprivation of a constitutional right, he must first show a violation of the underlying constitutional right." *DeMartino v. N.Y. State Dep't of Labor*, 167 F. Supp. 3d 342, 373 (E.D.N.Y. 2016) (citing *Singer v. Fulton Cty. Sheriff*, 63 F.3d 110, 119 (2d Cir. 1995)). "Stated otherwise, a civil conspiracy claim does not set forth an independent cause of action but rather is sustainable only after an underlying claim has been established." *Id.* (quotation and ellipsis omitted).

25

4829328, at *8 (E.D.N.Y. Sept. 29, 2014) ("complaint premised on the joint participation theory of state action cannot rest on conclusory assertions that private individuals acted in concert with state officials but must allege facts demonstrating that private actors and agents of the state carried out a deliberate, previously agreed upon plan, or that their actions constituted a conspiracy or meeting of the minds."); *see also See Smulley v. Liberty Mut. Holding Co.*, 22-CV-1158, 2023 U.S. App. LEXIS 6004, at *4-5 (2d Cir. Mar. 14, 2023).

Plaintiff argues in her opposition—absent any judicial authority to support the proposition— that the Court should take judicial notice that the Union Defendants are acting under color of law, just as courts have for on-duty police officers.  Pl. Opp. Union Def. at 6.  Further, Plaintiff suggests that the UFT as a private entity and Inserra, Welch, and Kalogeras as private individuals jointly engaged with state officials—Kelch and Davis[10]—in prohibited action, which establishes their actions as "under color" of law for the purposes of a 1983 conspiracy claim.  *Id.* Plaintiff asserts that the Union Defendants are acting "under the color of law" because of their "willful participation" with the Individual City Defendants in the purported conspiracy against Plaintiff to violate her civil and constitutional rights.  *Id.* at 6-7.

Plaintiff claims defendants conspired to violate her following rights: (1) right to equal protection of the laws; (2) privileges and immunities; and (3) freedom of association "by interfering with [Plaintiff's] freedom to associate with Jean Brutus in violation of the First Amendment."[11]  Pl. Opp. Union Def. at 6-7; TAC. ¶ 173; *see id,* ¶¶ 2, 160, 182-85.  Plaintiff's

---

[10] Note the Court has already determined that Plaintiff has not plead sufficiently to support the contention that the City Defendants, but more specifically here—the Individual City Defendants Kelch and Davis—are state officials.  *See Infra* Section A.

[11] Plaintiff alleges in furtherance of this conspiracy, "K[elch] and D[avis] had attempted to prevent [Plaintiff] from spending her duty-free lunch period with … Brutus[,]" *see* TAC at 182-85, and "K[elch] had instructed staff at [the school], including … Brutus, not to associate with [Plaintiff], and to keep [Plaintiff] ostracized," *see id.* at 114, 148; *Id.* ¶¶ 174-75.

26

arguments are unavailing.  The complaint does not plead a plausible claim that the Union Defendants conspired with the DOE or the Individual City Defendants.

Plaintiff makes conclusory and naked assertions "devoid of 'further factual enhancement[,]'" *see Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).[12]  Here, Plaintiff fails to plead any facts to suggest there was a meeting of the minds amongst the City Defendants and Union Defendants to inflict an unconstitutional injury.  For example, Plaintiff's statement that Individual Union Defendant Inserra had a "close relationship" with City Defendants Kelch and Davis is conclusory and fails to imply they engaged in a conspiracy.  TAC ¶ 100.  Further, Plaintiff's claim that City Defendant Kelch instructed staff at the Life Academy, specifically Jean Brutus, not to associate with Butts does not alone plausibly implicate the Union Defendants.  *Id.* ¶175.  The TAC only states that Butts emailed Union Defendant Kalogeras to inform him that Kelch and Davis were allegedly harassing Jean Brutus for not ostracizing Butts.  *Id.*  ¶ 114.  However, the mere fact that Plaintiff alleges that Kalogeras "did nothing" about the email complaint does not plausibly allege a conspiracy.  Plaintiff also alleges that the City Defendants and UFT conspired to retaliate against her for refusing to settle the present lawsuit. *Id.* ¶ 194.

At oral argument, Plaintiff's allegations of conspiracy between the UFT and the City Defendants center around her claims that (1) the UFT did not grieve some of her complaints despite having a contractual obligation to; (2) the UFT did not provide Plaintiff a reason for not grieving her complaints; and (3) that a Grievance Committee verbally informed Plaintiff that she sent "too many emails to Kelch."  OA 12:17-16:5; *see* TAC ¶¶ 38-40.[13]  Yet the few instances when Plaintiff

---

[12] *See* TAC ¶¶ 2,42,173,174,175,194 ("[DOE] and [UFT] conspired"), ("Welch … who is believed to be conspiring and collaborating with Kelch"), ("UFT, Inserra, Welch, and Kalogeras, had conspired with DOE, Kelch, and Davis, to violate [Plaintiff's] civil and constitutional rights");("In furtherance of the aforesaid conspiracy, Kelch and Davis had attempted to prevent [Plaintiff]" from spending her lunch with Brutus),("… in furtherance of the aforesaid conspiracy," Klech instructed staff not to associate with Plaintiff"), ("UFT, DOE, and Kelch coordinated their actions and conspired together to terminate [Plaintiff's] employment").
[13] *See* TAC ¶¶ 87,110-11,120-24,154-55.

says the Individual City Defendants communicated with Individual Union Defendants, either to Plaintiff or amongst themselves, were about scheduling, job duties, and students.[14] Plaintiff asserts nothing beyond the normal communications expected in a professional environment. There are no facts plead to support the contention that the Union Defendants conspired or even spoke about Plaintiff's grievances. Thus, any assertion of a conspiracy imputing the status of a "state actor" upon the Union and the individual defendants is not supported. *Catania*, 2023 U.S. Dist. LEXIS 73772, at *10.

Therefore, Plaintiff's Section 1983 claims against the Union Defendants are dismissed.

**2. Section 1985 Claim Fails Against the City and Union Defendants**

As under Section 1983, to make out conspiracy under Section 1985(3), Plaintiff must allege: "'(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.'" *Robinson v. Allstate Ins. Co.*, 508 F. App'x 7, 9 (2d Cir. 2013) (quoting *United Bhd. of Carpenters and Joiners of Am., Loc. 610, AFL-CIO v. Scott*, 463 U.S. 825, 828-29 (1983)); *see* section D(1) *supra*. And, as above, Plaintiff must allege "some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end." *Webb v. Goord*, 340 F.3d 105, 110 (2d Cir. 2003) (internal quotations omitted). "[T]he conspiracy must also be motivated by some racial or perhaps otherwise class-based, invidious discriminatory

---

[14] E.g., TAC ¶ 34 ("Despite WELCH's knowledge of the true facts as a Chapter Leader, WELCH did nothing to stop this retaliation, thus encouraging KELCH to carry out her retaliatory and unfair treatment of BUTTS".); *Id*. ¶ 41 ("On February 12, 2020, BUTTS sent another email to KELCH and WELCH concerning the elevator pass issue WELCH, the UFT Chapter Leader, who is believed to be conspiring and collaborating with KELCH, informed BUTTS that BUTTS needed to present a doctor's note to get the elevator pass[.]").

animus behind the conspirators' action." *Thomas v. Roach*, 165 F.3d 137, 146 (2d Cir. 1999) (internal quotations omitted).

The Court already discussed that Plaintiff has failed to show City Defendants entered into an agreement or meeting of the minds with the Union Defendants with the intent to violate Plaintiff's constitutional rights. *See* section D(1) *supra*. The complaint is also barren of any facts to support a plausible inference of discriminatory intent. While Plaintiff, who identifies as African American and a woman, is a member of protected classes, her allegations that the City Defendants and Union Defendants selected their course of action because of her race or gender are entirely unsupported. *See Thomas*, 165 F.3d at 147. Accordingly, Plaintiffs' § 1985(3) claim with respect to *all Defendants* must be dismissed.

### 3. Section 1981 Claims Against Union Defendants

#### a. Section 1981[15] Claims for Racial Discrimination Fail Against Union Defendants

Although at the motion to dismiss stage a plaintiff need not prove discrimination, she must "give plausible support to a minimal inference of discriminatory motivation." *Franchino v. Terence Cardinal Cooke Health Care Ctr., Inc.*, 692 F. App'x 39, 41 (2d Cir. 2017) (summary order) (quoting *Littlejohn*, 795 F.3d at 311).[16] Under Section 1981, a plaintiff must plausibly allege that "but for race, [she] would not have suffered the loss of a legally protected right." *Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*, 140 S. Ct. 1009, 1019 (2020). "[I]t is insufficient to merely plead that race was a motivating factor in the discriminatory action."

---

[15] The Court need not address the arguments regarding fair representation and its relation to Section 1981 claim given that the parties have already conceded that fair representation arises out of the LMRA and that the claim should be dismissed due to failure of subject matter jurisdiction.

[16] An inference of discrimination can arise from: "'the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group[.]'" *Id.* at 41-42 (quoting *Littlejohn*, 795 F.3d at 312).

*Brown v. Montefiore Med. Ctr.*, 19-CV-11474 (ALC), 2021 WL 1163797, at \*5 (S.D.N.Y. Mar. 25, 2021) (citing *Comcast Corp.*, 140 S. Ct. at 1015); *see Iodice v. Archcare at Terence Cardinal Cooke Health Care Ctr.*, 2022 U.S. Dist. LEXIS 162605, at \*34 (S.D.N.Y. Sep. 8, 2022).

Plaintiff's claim for racial discrimination against Union Defendants under § 1981 similarly fails because she has not pleaded facts sufficient to support a claim. Plaintiff only asserts conclusory statements as to why the Union Defendants' alleged CBA breach constitutes racial discrimination. The only explanation Plaintiff provides is that "it was embarrassing for both UFT and DOE to proceed with grievances on the basis of such racial discrimination." TAC ¶ 169. Moreover, these allegations are raised with respect to Plaintiff's breach of contract claims which the Court has already dismissed.[17] *See* section C *supra*; *see also Iodice*, 2022 U.S. Dist. LEXIS 162605, at \*34 (S.D.N.Y. Sep. 8, 2022).

Plaintiff implies that Welch, Kalogeras, and Inserra did not file or properly pursue Plaintiff's complaints and grievances because they are not African American, and thus their acts were in part racially-motivated. TAC ¶¶ 165-67, 169. The TAC is devoid of any other facts to support the contention that the Individual Union Defendants actions were racially-motivated. Failure to allege any facts as to even an inference of discrimination dooms Plaintiff's claims. *See Burgis v. N.Y.C. Dep't of Sanitation*, 798 F.3d 63, 68-69 (2d Cir. 2015), *cert denied*, 577 U.S. 1143 (2016) (affirming the district court's decision granting motion to dismiss plaintiff's claims under

---

[17] "Employment discrimination claims against unions are analyzed differently from claims against employers, in that claims against unions are grounded in the union's duty of fair representation to its members." *Saunders v. N.Y. Convention Ctr. Operating Corp.*, 20 Civ. 5805 (GHW), 2022 WL 3577773, at \*3 (S.D.N.Y. Aug. 19, 2022); *see Staten v. Patrolmen's Benevolent Ass'n of City of New York*, 282 F. Supp. 3d 734, 739 (S.D.N.Y 2017), *aff'd* 736 F. App'x (2d Cir. 2018) ("Ordinarily, an employee's only claim against a union for violation of the terms of a [CBA] is for violation of the duty of fair representation."). In light of the fact that the Court has already dismissed the Breach of Contract CBA and duty of fair representation that arises thereof, the Court need not delve into an analysis as to the UFT. *See Iodice*, 2022 U.S. Dist. LEXIS 162605, at \*34 (S.D.N.Y. Sep. 8, 2022) ("Plaintiff, presumably aware that he cannot sue the Union under Section 1981 without pleading and proving a violation of the Union's duty of fair representation, instead pleads a claim directly against Defendant Atkins.")

§ 1981 where plaintiff "fail[ed] to allege in other than conclusory fashion any specific instances of discrimination."). Plaintiff's § 1981 discrimination claim is dismissed.

### b. Section 1981 Claim for Retaliation Fail Against the Union Defendants

Like Section 1983 discussed above, *see* section A(iii) *supra*, a plaintiff bringing a retaliation claim under Section 1981 must plausibly "plead that (1) [she] participated in a protected activity known to defendant; (2) the defendant took an employment action disadvantaging him; and (3) there exists a causal connection between the protected activity and the adverse action." *Patel v. City of New York*, 12-CV-6312 (MGC), 2013 WL 1500432 at *1 (S.D.N.Y. Apr. 10, 2013), aff'd, 699 F. App'x 67 (2d Cir. 2017) (internal citations and alterations omitted). A "protected activity" is an action taken by the Plaintiff "to protest or oppose statutorily prohibited discrimination." *Id.* The "causal connection" requires that "the adverse action would not have occurred in the absence of the retaliatory motive." *Alvarado v. Nordstrom, Inc.*, 685 F. App'x 4, 7 (2d Cir. 2017) (internal citations and quotation marks omitted).

Plaintiff makes no allegations that the Union Defendants retaliated against her. *See* TAC ¶¶ 177-80. The only reference to retaliation with respect to the Union Defendants is Plaintiff's allegation that "UFT had never proceeded with grievances for any paraprofessional essentially on the basis that breaches of the CBA had occurred due to racial discrimination or retaliation against a union member[,]" *Id.* ¶ 170, as part of her "second cause of action[.]" *See id.* at 23 (heading). On its face, this allegation is not clear. However, the Court understands the allegation to be that the UFT failed to pursue retaliation-based grievances on behalf of union-members. Because

Plaintiff has failed to state § 1981 claim against the Union Defendants, this claim is dismissed. *See Patel*, 2013 WL 1500432 at *1.[18]

The entirety of Plaintiff's federal claims against Union Defendants pursuant to §§ 1981, 1983, and 1985 are dismissed.  See *Jarvois v. Ferrara*, 18-CV-3997 (GHW), 2019 U.S. Dist. LEXIS 139857, at *15-16 (S.D.N.Y. Aug. 19, 2019).

### E.  Remaining Claims State and City Claims

Considering the Court's finding that all of the Federal Claims in Plaintiff's Complaint are dismissed against all Defendants, the Court declines to exercise supplemental jurisdiction over Plaintiff's State and City Claims.[19] *See Stuart v. Cnty. of Nassau*, 2022 U.S. App. LEXIS 17027, *4.[20]

## CONCLUSION

For the foregoing reasons, the City Defendants' and Union Defendants' Motions to Dismiss are **GRANTED** solely as they relate to Plaintiff's federal law claims, including 18 U.S.C. §§ 1983, 1981, and 1985 claims and claims arising out of 29 U.S.C. §§ 185-188.  Accordingly, Plaintiff's Federal Claims against City Defendants and Union Defendant are hereby dismissed.

---

[18] The only other allusion to claims of retaliation arises out of the Union Defendants' alleged participation a conspiracy with the City Defendants, s*ee* TAC ¶ 177, and the Court has already deemed that this claim fails, s*ee* section D(1) *supra*.

[19] Plaintiff's remaining state law claims are brough under the Constitution of the State of New York, the New York City Human Rights Law ("NYCHRL"), NYC Administrative Code, §§8-101, et seq., New York Labor Law, §740, and Civil Service Law, §§75 & 75-b.  Regarding Plaintiff's Unlawful Termination Claim, while the TAC fails to clearly state which statute Plaintiff is seeking relief, the Court finds based on what has been plead and Plaintiff s opposition papers, that she is seeking state law relief as it relates to unlawful termination, and thus the Court will not address these claims.  Further the collateral estoppel argument proffered by Plaintiff in her supplemental briefing arises out of state law claims and thus the Court will not address the merit of those arguments either.

[20] A district court may "decline to exercise supplemental jurisdiction" if it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c), (c)(3); *see Cohill*, 484 U.S. at 350 n.7 ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims.").

SPA-33

The Court declines supplemental jurisdiction of remaining State and City claims.  The

Clerk of Court is respectfully directed to close the case.


**SO ORDERED.**

/s/ Orelia E. Merchant
ORELIA E. MERCHANT
United States District Judge

Dated:  September 30, 2024
Brooklyn, New York

33

$$\boxed{\textbf{SPA-34}}$$

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x
CANDACE A. BUTTS,

                  Plaintiff,

          -against-

EUGENIA KELCH, THERESA DAVIS, UNITED
FEDERATION OF TEACHERS, NEW YORK CITY
DEPARTMENT OF EDUCATION, STELLA INSERRA,
RYAN WELCH, and WILLIAM KALOGERAS,

                  Defendants.
-------------------------------------------------------------------x

**MEMORANDUM & ORDER**
22-CV-04418 (OEM) (CLP)

ORELIA E. MERCHANT, United States District Judge:

      Before the Court is Plaintiff Candace A. Butts' ("Plaintiff") motion for reconsideration of

the Court's September 30, 2024 Order granting Defendants' Eugenia Kelch ("Kelch"), Theresa

Davis ("Davis"), and the New York City Department of Education ("DOE"), (collectively, "City

Defendants") motion to dismiss.

      For the following reasons Plaintiff's motion is DENIED.

## BACKGROUND

      The Court assumes the parties' familiarity with the facts alleged in Plaintiff's Third

Amended Complaint ("TAC"), ECF 33, and the procedural history in this action, and therefore

does not recount them in full here.

      Plaintiff brought this action against the City Defendants, defendants Ryan Welch, Stella

Inserra, William Kalogeras, and the United Federation of Teachers, Local 2, AFT, AFL-CIO

("UFT") (collectively "Union Defendants") alleging: (1) hostile work environment, (2) breaches

of Collective Bargaining Agreement ("CBA") and racial discrimination, (3) conspiracy to violate

rights, (4) continued retaliation, and (5) wrongful termination under both state and federal laws.

*See generally* TAC. The City Defendants moved to dismiss under Rule 12(b)(6) only, and the Union Defendants moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). *See City Defendants' Motion to Dismiss,* ECF 50; Union Defendants' Motion to Dismiss, ECF 54.

On September 30, 2024, the Court granted both motions, dismissed Plaintiff's federal law claims, and declined to exercise jurisdiction with respect to the remaining state law claims.[1] Memorandum & Order ("Order"), ECF 67. As relevant to the instant motion, the Court found that Plaintiff had failed to state claims under 42 U.S.C. §§ 1983 and 1981 against the Individual City Defendants for (1) hostile work environment because she failed to allege pervasive harassment or that such harassment plausibly occurred because of Plaintiff's membership in a protected class, *id.* at 13-14; (2) gender and racial discrimination claims because Plaintiff failed to allege facts plausibly giving rise to an inference of discriminatory intent, *id.* at 15-16; and (3) retaliation because Plaintiff did not allege a protected activity, *id.* at 17-18.

On October 24, 2024, Plaintiff moved for reconsideration of the Order granting the motion to dismiss as to the City Defendants. Plaintiff's Motion for Reconsideration (Pl.'s Mot.), ECF 70. The City Defendants filed a response on November 8, 2024, and Plaintiff replied on November 11, 2024. The City Defendants' Response in Opposition ("City Defs.' Opp."), ECF 71; Plaintiff's Reply ("Pl.'s Reply"), ECF 73.

## STANDARD OF REVIEW

To succeed on a motion for reconsideration, the movant must show "'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d

---

[1] The Court dismissed this action, and the Clerk of Court entered judgment. *See* Order at 32-33; Judgment, ECF 68.

Cir. 1992) (quoting 18 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 4478 (3d ed. June 2024)).   The standard for a motion for reconsideration "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.,* 70 F.3d 255, 257 (2d Cir. 1995); *see also* E.D.N.Y. & S.D.N.Y. Local Civ. R. 6.3 (providing that the moving party must "set[ ] forth concisely the matters or controlling decisions which the moving party believes the court has overlooked").

A motion for reconsideration is "not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple[.]" *Analytical Surveys, Inc. v. Tonga Partners, L.P*., 684 F.3d 36, 52 (2d Cir. 2012) (quotation and citation omitted).   Reconsideration of a court's previous order is "an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources*." In re Initial Pub. Offering Sec. Litig.*, 399 F. Supp. 2d 298, 300 (S.D.N.Y. 2005) (internal citation and quotation omitted), *aff'd sub nom. Tenney v. Credit Suisse First Boston Corp.*, 05-CV-3430, 05-CV-4759, & 05-CV-4760, 2006 WL 1423785, at *1 (2d Cir. 2006).   The decision to grant or deny a motion for reconsideration is "within 'the sound discretion of the district court.'" *Premium Sports Inc. v. Connell*, 10-CV-3753 (KBF), 2012 WL 2878085, at *1 (S.D.N.Y. July 11, 2012) (quoting *Aczel v. Labonia*, 584 F.3d 52, 61 (2d Cir. 2009)).

## DISCUSSION

First, Plaintiff argues that the Court has misapplied the familiar legal standard on a motion to dismiss, because it "viewed the allegations of the complaint individually in isolation rather than . . . as a whole in their totality as required by law."  Pl.'s Mot. at 3, 6 (citing *Kaplan v. Lebanese*

*Canadian Bank, SAL*, 999 F.3d 842, 865 (2d Cir. 2021)).  Plaintiff further asserts that the Court failed to accept all factual allegations in the TAC as true.  *Id.* at 6.  But, as Defendants correctly argue in response, City Defs.' Opp. at 4, Plaintiff has not identified any factual allegations that the Court failed to accept – or how the Court supposedly failed to consider the TAC in its totality. Without pointing to "data that the court overlooked" which "might reasonably be expected to alter the conclusion reached by the court[,]" reconsideration of this Court's Order is not proper. *Shrader*, 70 F.3d at 257.

Second, Plaintiff argues that the Court failed to make the "obvious inference" that Plaintiff was treated differently because of her sex.  Pl.'s Mot. at 6.  Further, Plaintiff asserts that the retaliation was made based on her national origin.  Pl.'s Reply at 2-3.  Regardless of which protected class Plaintiff intended to base her claims, this argument is unavailing given that the Court did in fact make this inference.  Although Plaintiff's did not state in the TAC that the alleged discrimination occurred due to her gender, race, or national origin, the Court nonetheless presumed those classes formed the basis for her claims.  Specifically, "th[e] Court accept[ed] here that Plaintiff belongs to the following protected classes: gender (female), race (Black), and national origin (American)."  Order at 14.  Moreover, the Court is not required to infer based on any conclusory allegations that discrimination occurred *because of* her membership in a protected class.  Nor is the Court required to consider new arguments or facts advanced in a party's reply. *See Connecticut Bar Ass'n v. United States*, 620 F.3d 81, 91 n. 13 (2d Cir. 2010).

Rather, Plaintiff was required to meet the pleading standard that she provides "at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Littlejohn v. City of N.Y.*, 795 F.3d 297, 311 (2d Cir. 2015).  As discussed in this Court's Order, Plaintiff did not state any facts to suggest an inference of discriminatory intent:  "The TAC entirely

fails to carry even the *de minimus* burden of establishing that any of these actions give rise to an inference of discriminatory intent on the basis of Plaintiff's race, gender, or ethnicity." Order at 15; *see id.* at 29 ("The complaint is also barren of any facts to support a plausible inference of discriminatory intent."). Such omissions plainly fail to meet the pleading standard, and Plaintiff has not presented any new evidence or controlling precedent here to warrant reconsideration.[2]

Third, Plaintiff asserts that the Court erred by requiring that Plaintiff specifically invoke Section 1983 in order to state a claim. Pl's Mot. at 4 (citing *Johnson v. City of Shelby, Miss.*, 574 U.S. 10 (2014), for the proposition that "the Supreme Court specifically held that no rule requires a plaintiff seeking damages for violations of constitutional rights to invoke Section 1983 expressly in order to state a claim"). However, this is an incorrect characterization of this Court's findings. The Court did not rule or in any way indicate that Plaintiff must specifically invoke Section 1983. *See generally* Order.

Fourth, Plaintiff argues that her retaliation claim should not have been dismissed for failure to state that she engaged in a protected activity because "[P]laintiff took steps to protect the rights of a disabled student . . . ." Pl.'s Mot. at 4-5 (citing *Weixel v. Bd. of Educ. of City of N.Y.*, 287 F.3d 138, 149 (2d Cir. 2002)). Plaintiff argues that her alleged advocacy on behalf of a disabled student is sufficient to support a retaliation claim under 42 U.S.C. §§ 1983 and 1981 for discrimination on the basis of sex, gender, race, or national origin. *Id.* at 5-6 (citing *CBOCS West, Inc. v. Humphries*

---

[2] Plaintiff asserts that the Court wrongly applied the standard under *McDonnel Douglass*, appropriate for disposition of a motion for summary judgment – not a motion to dismiss. Pl.'s Mot. at 4 (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002)). At one point in the Order, the Court cited to *Tolbert v. Smith*, 790 427 (2d Cir. 2015), stating that Plaintiff must establish a prima facie case of discrimination by showing: "(1)[s]he belonged to a protected class; (2) [s]he was qualified for the position [s]he held; (3) [s]he suffered an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent." Order at 14 (alterations in original) (quoting *Tolbert*, 790 F.3d at 435). However, the basis for the Court's dismissal of Plaintiff's claims remains unchanged: Plaintiff has not plausibly alleged with "at least minimal support . . . that the employer was motivated by discriminatory intent." *Littlejohn*, 795, F.3d at 311 (interpreting *Swierkiewicz*, 534 U.S. 506).

SPA-39

553 U.S. 442 (2008) (finding cognizable retaliation claim under § 1981 where one individual complained about racial discrimination of another individual)). While a plaintiff's efforts to help a disabled student might be cognizable as a retaliation claim under the Americans with Disabilities Act ("ADA"), they are not a protected activity for the purposes of Plaintiff's claims under § 1983. Plaintiff alleged discrimination on the basis of her gender, race, and national origin in violation of the 14th Amendment, under which individuals with disabilities are not a suspect class. *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 442, 446 (1985) (individuals with disabilities are not a suspect class under the Equal Protection Clause). As explained in the Order, to state a retaliation claim, the Plaintiff must have engaged in a protected activity that led to an adverse employment action. Order at 16. "The activity complained of must be one that is prohibited by the statute under which Plaintiff brings her claims." *Id.* (citing *Mi-Kyung Cho v. Young Bin Café*, 42 F. Supp. 3d 495, 508 (S.D.N.Y. 2013)). "[C]ourts in this Circuit have long held that 'claims of employment discrimination based on disability,' including disability-based retaliation claims, 'are not cognizable under § 1983.'" *Baptiste v. City Univ. of New York*, 680 F. Supp. 3d 415, 425-26 (S.D.N.Y. 2023) (quoting *Bonds v. County of Westchester*, 19-CV-1712 (KMK), 2020 WL 4347704, at *8 (S.D.N.Y. July 28, 2020) and citing *Apatow v. Town of Stratford*, 651 F. Supp. 3d 573, 583 (D. Conn. 2023)). Therefore, because non-compliance with a disabled student's Individualized Education Plan, *see* TAC ¶¶ 46-48, is not actionable under § 1983, Plaintiff has not alleged a protected activity sufficient to support a claim for retaliation.

Next, Plaintiff argues she did in fact suffer a sufficiently adverse employment action and that, in granting City Defendants' motion to dismiss her discrimination claim, the Court incorrectly characterized the alleged adverse employment action as "trivial harms" because they were considered as "isolate[d]" incidents rather than considered "as a whole in the context of the Rule

SPA-40

12(b)(6) motion . . ..." Pl.'s Mot. at 7.  However, the Court's characterization of Plaintiff's alleged adverse employment action as "trivial" was only with respect to one allegation: that Plaintiff was told she must present a doctor's note in order to receive an elevator pass.[3]  *See* Order at 15.  Rather, the Court did accept that Plaintiff's alleged suspension was an adverse employment action sufficient to state a claim.  *See id.* at 14-15.  Such a finding in of itself was not dispositive because, as stated above, Plaintiff failed to adequately allege that any adverse employment action was based on her race, gender or national origin.  *See id.* at 15.

Lastly, Plaintiff contends that "requir[ing]" Plaintiff to "begin all over again in state court" does "not accord with justice" after the time and effort spent "familiarizing [herself] with the case and its relationship with federal law."  Pl.'s Mot. at 7.  Federal courts are courts of limited jurisdiction, and Plaintiff has failed to adequately state a claim under federal law which would require the Court's exercise of such jurisdiction.  The exercise of supplemental jurisdiction over state law claims is a plainly a matter of discretion, which this Court once again declines.  *See* 28 U.S.C. § 1367.  Moreover, "Ordinarily, when a plaintiff's federal claims are dismissed before trial,

---

[3] For the same reason, Plaintiff's argument that "the significance of the [adverse employment action] injury sustained . . . is irrelevant" is unavailing.  *See* Pl.'s Mot. at 7.  Plaintiff cites to *Muldrow v. City of St. Louis, Missouri*, 601 U.S. 346 (2024), which held that an employee challenging a job transfer under Title VII's discrimination provision must show that the transfer brought about some harm, but need not show that the harm was "significant" or "material."  *Muldrow*, 601 U.S. at 359.  Rather, a plaintiff need only show "some injury respecting her employment terms or conditions" which "left her worse off, but need not have left her significantly so."  *Id.*  As an initial matter, *Muldrow* addressed claims brought under Title VII, not § 1983.  Indeed, district courts are split as to whether *Muldrow*'s "some harm" standard applies outside of the specific context of involuntary job transfers.  *See, e.g., Rackley v. Constellis, LLC.*, 22-CV-4066 (GHW) (RWL), 2024 WL 3498718, at *21 & n.16 (S.D.N.Y. June 17, 2024) ("It is uncertain whether the Supreme Court's 'some harm' standard . . . applies to discrimination claims beyond the involuntary transfer context.") (collecting cases).  Regardless of whether *Muldrow* applies in cases such as Plaintiff's, the severity of the alleged adverse employment action did not play a role in the Court's analysis.  Rather, with respect to this particular issue, Plaintiff did not state any adverse action whatsoever: Plaintiff requested an elevator pass, was told she would need to submit a doctor's note, and Plaintiff thereafter received an elevator pass.  *See* TAC ¶ 45.  Plaintiff has not pleaded sufficient facts to plausibly alleged that she suffered "some injury," "harm," or "disadvantage," or was otherwise "worse off" than she was before the purported incident.  *Muldrow*, 601 U.S. at 354-56, 359; *see Bonnafini v. City Univ. of New York*, 20-CV-5118 (BMC), 2024 WL 4293118, at *5 (E.D.N.Y. Sept. 25, 2024) (noting that even after *Muldrow*, "not every change in working conditions, by itself, can be an adverse employment action.").  Moreover, even if Plaintiff had stated an injury with respect to this incident, the TAC does not support an inference of discrimination, which is fatal to her claim.

SPA-41

the state law claims should be dismissed as well." *Chenensky v. New York Life Ins. Co.*, 942 F. Supp. 2d 388, 391 (2d Cir. 2013) (citations omitted).

More importantly, Plaintiff has failed to set forth an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice. Accordingly, Plaintiff's motion for reconsideration must be denied.

## CONCLUSION

For the reasons stated herein, Plaintiff's motion is DENIED.

**SO ORDERED.**

_____/s/_____
ORELIA E. MERCHANT
United States District Judge

February 4, 2025
Brooklyn, New York

8